**JACK et al. v. CRAIGHEAD RICE MILLING CO.**

**NEW AMSTERDAM CASUALTY CO. v. SAME.**

Nos. 13607, 13608.

Circuit Court of Appeals, Eighth Circuit.

March 25, 1948.

Writ of Certiorari Denied May 24, 1948.
See 68 S.Ct. 1340.

97

Lowell W. Taylor, of Memphis, Tenn. (Arthur L. Adams, of Jonesboro, Ark., on the brief), for appellants.

Charles Frierson and Archer Wheatley, both of Jonesboro, Ark. (Joe C. Barrett, of Jonesboro, Ark., on the brief), for appellee.

Before GARDNER, THOMAS, and COLLET, Circuit Judges.

GARDNER, Circuit Judge.

These are appeals by the defendants from a judgment in an action brought to recover

damages for failure of a contractor to perform a building contract.

The plaintiff, Craighead Rice Milling Company, entered into a contract with defendant J. M. Jack Construction Company for the construction of a rice drier at Gibson, Arkansas. The contract provided that the contractor should furnish all labor, material, tools, equipment, supplies and other materials of any nature to construct a rice drying plant and storage bins attached thereto, in accordance with plans and specifications, for the sum of $350,000. The contract, dated May 1, 1945, contained the following provisions:

"It is understood between the parties that the plans hereinbefore mentioned are of a preliminary nature, but the contractor agrees that detailed plans embodying all functions and dimensions indicated in the preliminary plans shall be prepared by Horner & Wyatt, Engineers, of Kansas City, Missouri, as the work progresses, and sufficiently in advance of each operation so that the Owner shall have opportunity to check and approve such detailed plans.

"It is understood between the parties hereto that the plans and specifications will be in sum and substance the same as those prepared for the Wheatley Plant of the Arkansas Rice Growers Association by Horner & Wyatt insofar as type of construction, quality of workmanship and material are concerned.

"The Contractor agrees that if notice to proceed is received by him on or prior to May 2, 1945, to provide facilities for receiving and drying rice not later than September 10, 1945, and to have at least two driers with their appurtenant equipment in operation at that date, and to have the entire plant complete and ready for drying and storage by November 1, 1945.

\* \* \* \* \* \*

"Time being of the essence of this contract, the Contractor agrees that should he fail to provide facilities for receiving and drying rice on the dates hereinbefore mentioned he shall cause to be paid to the Owner a sum of One Hundred ($100.00) Dollars per day for each calendar day thereafter, until such facilities as above mentioned have been provided, not as a penalty but as liquidated damages herewith agreed to that the Owner shall suffer by reason of his failure to comply with the terms of this agreement."

The building contract also contained provision that the contractor should furnish a construction bond executed by a good and substantial bonding company, for its faithful performance. The contractor accordingly furnished a bond in the penal sum of $350,000, executed by defendant New Amsterdam Casualty Company as surety. This bond provided that the contractor should indemnify plaintiff against any loss or damage directly arising by reason of the failure of the contractor faithfully to perform the contract. This bond contained the following, among other provisions:

"Provided, however, that this Bond is executed and accepted upon the following express conditions, each of which shall be a condition precedent to any right of recovery thereon, anything in the contract to the contrary notwithstanding:

"First, that in the event of any default on the part of the Principal, a written statement of the particular facts showing such default and the date thereof shall be delivered to the Surety by registered mail, at its office in the City of Baltimore, Maryland, promptly and in any event within ten (10) days after the Obligee or his representatives, or the Architect, if any, shall learn of such default; \* \* \*

"Third. That the Surety shall not be liable for any damages resulting from \* \* \* strikes or labor difficulties \* \* \* the elements \* \* \*; nor for the non-performance of any guaranties of the efficiency or wearing qualities of any work done or materials furnished, or the maintenance thereof or repairs thereto; \* \* \* nor for damages caused by delay in finishing said contract in excess of ten per centum of the penalty of this instrument; \* \* \*"

The bond also contained the following provision:

"Sixth. That no right of action shall accrue upon or by reason hereof, to or for the use or benefit of anyone other than the Obligee herein named; and that the obligation of the Surety is, and shall be con-

strued strictly as, one of suretyship only; that this Bond shall be executed by the Principal before delivery, and that it shall not, nor shall any interest therein or right of action thereon be assigned without the prior written consent of the Surety, duly executed by its President or one of its Vice Presidents and its corporate seal affixed thereto, duly attested by its Secretary or one of its Assistant Secretaries."

The complaint of the plaintiff alleged that the contractor did not erect the structure in accordance with the contract plans and specifications and that damages of $100 per day for delay of completion on the day provided by the contract were due plaintiff. It claimed damages in the sum of $350,000.

The Surety Company, in its answer, alleged that the contractor had almost performed; that plaintiff terminated and cancelled the contract; that plaintiff gave no notice of the defaults alleged in the complaint; that many of the matters complained of resulted from strikes, labor conditions and acts of God over which the contractor had no control; that plaintiff had an engineer on the job while the work was in progress; that he was well aware of the manner in which the work was being done, but made no complaint and gave no notice to the Surety; and that plaintiff, prior to the commencement of the action, had made an absolute assignment of the bond and of all its claims upon it, to the Union Planters National Bank and Trust Company, in Memphis.

The contractor, while not made a party to the action originally, intervened, asserting a primary liability for any judgment that might be entered, and filed answer denying default in performance and alleging that when the building was almost completed plaintiff, without just cause, terminated the contract and refused to permit the contractor to complete the work; that the work was performed in substantial compliance with the plans and specifications; that there remained very little to be done to effect completion, and that plaintiff "was deliberately refusing to do the things necessary to finish the structure and machinery in accordance with the plans and specifications and is deliberately refusing to utilize the building and equipment for either the drying or storage of rice."

Plaintiff filed a reply, denying substantially all the affirmative defenses pleaded in the answer, except that it admitted the assignment.

The action was tried to a jury, and at the close of all the testimony defendant New Amsterdam Casualty Company interposed a motion for directed verdict, which was denied. The case was submitted to the jury on instructions to which certain exceptions were saved. The jury returned a verdict for $150,000.00, upon which judgment was entered, and the defendants have separately appealed, presenting the appeals upon a single record and a joint brief. Defendants seek reversal on substantially the following grounds: (1) The court erred in denying the motion of the Surety Company for a directed verdict predicated upon the plaintiff's violation of a condition precedent by assigning its claim on the bond; (2) the court erred in refusing to sustain the Surety's motion for a directed verdict on the ground that the plaintiff had not given notice of any of the many defaults which it alleged resulted in the damages claimed; (3) errors were committed in admitting proof of the cost of waterproofing above grade; (4) the court erred in the manner of submitting the question of liquidated damages for delay in completion; (5) the court erred in permitting the plaintiff to offer in evidence the plans and specifications and to permit witnesses to testify with reference to the Wheatley plant; (6) the court erred in failing to give requested instructions proposed by defendants.

The contentions of the defendants are directed largely to the ruling of the court in denying the motion of New Amsterdam Casualty Company for a directed verdict. This motion is brief and reads as follows:

"We move for a directed verdict in favor of the New Amsterdam Casualty Company upon the ground that the plaintiff made an assignment of the bond and of its claim on the bond in violation of the terms of the bond, and upon the ground that the plaintiff failed to give the surety notices, as required by the bond, of the alleged defaults upon which this suit is predicated."

It seems to have been the contention of defendants in the trial court, and they renew the contention here, that the assignment of this bond as a pledge or collateral security, had the effect of invalidating it. In overruling the motion for a directed verdict, the court, among other things, said:

"On the question of the assignment clause the court is going to hold that the assignment does not render this contract invalid."

 It is observed that there is no suggestion in this motion that the assignment was effective, and hence, the plaintiff was not the real party in interest. Nor does the original brief of defendants in this court contain any such suggestion. But it is contended that this assignment violated the terms of the bond, and hence, the bond was invalid. The provision which we have before set out must be considered as a whole. It provides that no right of action shall accrue for the use or benefit of any other than the obligee therein, and that no interest or right of action thereon may be assigned without the written consent of the surety. The assignee is not attempting to maintain this action, and hence, we are not called upon to determine what right, if any, it acquired by reason of this assignment. Certainly, if the assignment conveyed no interest or cause of action to the assignee that right continued in the obligee of the bond, the plaintiff in this action. There is nothing in the provision indicating that it was intended to affect the rights of the obligee, and the assignee is not here asserting any rights under the alleged assignment. The only assignment relied upon was one which pledged this bond as surety for the payment of money. This was in the nature of a mortgage. Turner v. Watkins, 31 Ark. 429; Marquese v. Felsenthal, 58 Ark. 293, 24 S.W. 493; Garetson-Greason Lbr. Co. v. Home Life and Accident Co., 131 Ark. 525, 199 S.W. 547; Sheridan v. Pacific States Fire Ins. Co., 107 Ore. 285, 212 P. 783; Thomson v. Thomson, 8 Cir., 156 F.2d 581; St. Louis Refrigerating & Cold Storage Co. v. United States, 8 Cir., 162 F.2d 394.

 The other ground specified in the motion for a directed verdict was that plaintiff failed to give the Surety notices of the alleged defaults, as required by the bond. The bond contained provision that in the event of default on the part of the principal, written statement of the particular facts showing such defaults, should be delivered to the Surety by registered mail within ten days after the obligee or his representative should learn of such default; that the Surety had the right within thirty days after the receipt of such statement to proceed with the performance of the contract or at its option to waive the right to so proceed. The court held in effect that this provision was valid but that it was one that might be waived by the Surety, and left to the jury the question as to whether there had in fact been such a waiver, and also left to the jury the question as to whether or not the Surety had actual notice. The Surety here, it must be remembered, is a paid surety and the contract of suretyship is to be construed in the same manner as a contract of insurance. Aetna Casualty & Surety Co. v. Big Rock Stone & Material Co., 180 Ark. 1, 20 S.W.2d 180; Union Indemnity Co. v. Forgey & Hanson, 174 Ark. 1110, 298 S.W. 1032. If the Surety already had knowledge or was chargeable with knowledge of the default, then failure to give notice in the form required by the stipulation would not relieve it from liability. The stipulation was manifestly intended merely to protect the Surety from avoidable loss and to give it an opportunity to take over the contract and complete it. Here it does not appear that the Surety suffered any loss by reason of the failure to give notice and the rule requiring loss to be proved is held to be applicable especially to compensated sureties. Heffernan v. United States Fidelity & Guaranty Co., 37 Wash. 477, 79 P. 1095; Overly Special School District No. 44 v. Haber, 193 Wis. 403, 214 N.W. 342. It is to be noted that the Surety specifically waived its right to proceed with the completion of the contract. If a surety, with knowledge of the facts sufficient to discharge it from liability, does any affirmative act which contemplates the continued existence of that status, it thereby waives its right to claim that it is discharged.

■ This provision with reference to notice was for the protection of the insurer, and hence, it could be waived. It affirmatively waived its right to proceed with the completion of the contract and in so doing it apparently acted on the theory that the contract was then in effect. The provision as to notice does not purport to require the insured to give notice unless and until it has knowledge of such defaults or defects. The various defects ultimately disclosed or claimed by the plaintiff were not apparent and were only determined after thorough inspection by competent engineers and contractors. So far as the record shows the only breach or default definitely known by the plaintiff was that with reference to the date of completion. Of these defaults the Surety was notified in writing by estimates given within the time limited, showing that the structure had not been completed.

The Supreme Court of Arkansas has held that any conditions inserted in a policy for the benefit of an insurer may be waived by it and that an insurance agent authorized to waive a forfeiture in a policy may do so orally, though the policy provides that the waiver must be endorsed on the policy. Connecticut Fire Ins. Co. v. Boydston, 173 Ark. 437, 293 S.W. 730. It is also held by the Supreme Court of Arkansas that if in any negotiations or transactions with the assured after knowledge of the grounds for forfeiture, the company recognizes the validity of the policy or does acts based thereon, or requires the insured to do some act or incur some trouble or expense, the forfeiture is waived. It has also been held that such waiver may be made by any authorized officer or agent of the company and that an agent is not deprived of his power to waive by provisions in the policy. Queen of Arkansas Ins. Co. v. Forlines, 94 Ark. 227, 126 S.W. 719; Queen of Arkansas Ins. Co. v. Malone, 111 Ark. 229, 163 S.W. 771; Phoenix Ins. Co. v. Public Parks Amusement Co., 63 Ark. 187, 37 S.W. 959; German-American Ins. Co. v. Humphrey, 62 Ark. 348, 35 S.W. 428, 54 Am.St.Rep. 297.

In Aetna Ins. Co. v. Daggett & Yancey, 177 Ark. 109, 5 S.W.2d 719, 722, in considering the question of waiver, the court said:

"In addition to this, with the knowledge of the date of the fire before it, appellant caused its adjuster to go to Marianna to adjust this loss, and, at considerable trouble and some expense, the appellees provided him means to get to and from this property."

The court also approved the following instruction:

"Any agreement, declaration or course of action on the part of an insurance company which leads a party insured to honestly believe that, by conformity thereto, a forfeiture of his policy will not be incurred, followed by due conformity on his part, will constitute a waiver of the forfeiture."

Again, in Hope Spoke Co. v. Maryland Casualty Co., 102 Ark. 1, 143 S.W. 85, 88, 38 L.R.A.,N.S., 62, Ann.Cas.1914A, 268, the court said:

"Appellee received notice of the accident in time to make a full investigation and to investigate to its satisfaction. It is not claimed that it suffered any loss or injury by reason of not having received the notice earlier. The defense is purely technical and without any substantial merit."

■ Having in mind these pronouncements by the Supreme Court of Arkansas, we refer to some of the facts which we think were sufficient to warrant the jury in finding that this requirement of the insurance contract had been waived. It will be remembered that there were two dates for completion of certain portions of the structure, one September 10, 1945, and the other November 1, 1945. The first covered certain bins, and the latter the completed structure. On September 6, 1945, copy of estimate was sent to the Surety Company, which showed that the bins required to be completed by September 10, 1945, were not and could not be in operation by that date. On September 19, 1945 and November 5, 1945, similar estimates were sent to the company, all of which showed noncompletion of the structure. On November 20, 1945, the Surety Company wrote consent to release 50 per cent of the money retained

by the plaintiff. On November 21, 1945, the plaintiff in writing notified the Surety Company that it refused to release these funds. On November 23, 1945, the Surety Company telegraphed requesting release of the funds, saying that the bond would not be affected by such release, and thereupon the plaintiff paid the contractor $25,004.25 in response to this request. On December 12, 1945, an estimate sent to the Surety Company showed the structure incomplete. On January 5, 1946, the plaintiff wrote the Surety Company, advising of threatened lien, and on January 14, 1946, the Surety Company wrote the plaintiff that the lien would be taken care of by the contractor. On January 30, 1946, the Surety Company forwarded written consent to release of all retained funds except 5 per cent. On February 16, 1946, the plaintiff wired the Surety Company as to the filing of liens by materialmen and other claimants, in answer to which, on February 20, 1946, the Surety Company, by letter, stated that it had just located the contractor who promised to list all outstanding bills. On February 28, 1946, C. W. Keefer, the Surety Company's representative who signed the bond, A. L. Adams, attorney for the contractor, and the plaintiff's Board of Directors met, pursuant to letters from the Surety Company and the contractor, and discussed the non-completion of the structure, the amount of bills owed by the contractor and the question of liquidated damages. On March 4, 1946, Frank W. Mueller, of St. Louis, Missouri, and Arthur L. Adams, of Jonesboro, Arkansas, attorneys for the Surety Company, requested plaintiff to pay the list of contractor's debts amounting to $29,148.48, this amount being in excess of the balance of the agreed contract price. On March 5, 1946, the Surety Company wired requesting release of all retainage, in answer to which plaintiff notified the Surety Company by registered mail that the contractor was in process of making default. On March 16, 1946, Mr. Turpin, engineer, and Mr. Frank W. Mueller, attorney for the Surety Company, visited the plaintiff, demanding copies of all lists of defects and of specifications, and were informed that many liens would soon be filed. C. W. Keefer, in charge of the St. Louis office of the Surety Company,

discussed with plaintiff the question of taking over and completing the contract, and at that time the insured inquired whether any further notice or information was required or desired by the Surety Company. On March 27, 1946, the Surety Company by telegram to the plaintiff waived its right to proceed to complete the contract, and on the same date the plaintiff wired the contractor of the Surety Company's action and stated that it considered the contract terminated. Following these negotiations the plaintiff secured competent engineers and builders for estimates, the first inspection being on April 29, 1946, at which time plaintiff first received information as to the bad condition of the structure. On May 9, 1946, George Taylor, District Claims representative of the Surety Company, requested a meeting with engineers and architects of plaintiff, and on that request plaintiff sent engineers from Memphis, Tennessee, to Jonesboro, Arkansas. On May 23, 1946, Mr. Fannin, attorney, and William Neill, engineer from New York City, representing the Surety Company, met with plaintiff's representatives and they requested the attendance of plaintiff's engineers from Memphis, Tennessee. Mr. Fannin, of New York City, from the legal department of the Surety Company, came to Jonesboro on May 23, 1946, arranged a meeting with plaintiff's representative, and remained in Jonesboro three or four days inspecting the plant and conferring with plaintiff's representatives. In his testimony he said:

"First, I will tell you that I knew we had notice. There had been several attempts at peacemaking, and I came down here to try to make a last effort to get the people together."

The above enumerated affirmative acts performed after the Surety Company had knowledge that it had not received notice in the technical form required by the insurance contract and knowledge of the contractor's defaults, indicated the continued existence of its status as a surety. The notice which the Surety Company had was recognized by it as sufficient to require it to decline to complete the structure as it had a right to do under the terms of its contract. The trial court did not decide as

a matter of law that there had been a waiver, but submitted the issue to the jury for its determination. This, we think, was as much as the Surety Company was entitled to under the evidence, and there was no error in refusing to grant the Surety Company's motion for a directed verdict.

■ Defendants urge that the court erred in admitting in evidence proof as to the amounts required to waterproof the walls of the storage tanks and bins above grade. The term "waterproofing" does not appear in the specifications, but it was proven that a wall constructed according to specifications would turn water. The specifications provide that, "The contractor will be expected to make all construction joints water tight and to place and puddle all concrete in such a way to secure a dense concrete free from honeycomb and to waterproof all interior walls up to the grade line." The specifications provide that the walls shall be six inches thick and the concrete mixed, poured and puddled in a specified manner, and that walls so constructed would not leak. There was evidence that the walls in the instant construction leaked. The specifications provide that the slipform work should proceed without stoppage until the walls were to their complete height but there was evidence that the walls were not so constructed in that the slipform left places susceptible to leakage and numerous honeycombs and cracks existed so that moisture accumulated in the bins and storage tanks after rains. There was evidence that dampness in the walls damages rice, and that if even a small amount of rice becomes wet the value of the entire mass would be seriously damaged. A skin coat on the outside conceals poor concrete construction but does not prevent leakage and would have to be removed before the leaks could be stopped. Witnesses for the plaintiff testified that the walls were so poorly constructed that they must be pointed up and patched on the inside; that this treatment was the cheapest and only effective way of approximating the specifications and of putting the walls into such condition that rice could be stored and that there was no cheaper way of repairing the structure.

■ Defendants argue in effect that the testimony of their experts as to the extent of leakage and cost of repairs was more credible than that of the plaintiff, but that can not be considered by us. There was no error in admitting the testimony of plaintiff on this question.

■ On the issue of liquidated damages the court instructed that if the plaintiff was entitled to recover damages under the instruction of the court, "Plaintiff is entitled to recover liquidated damages for the delay in completing the structure, which damages have been agreed upon as $100 per day. These liquidated damages shall be computed from the period from September 10, 1945 to October 9, 1945, and from November 1, 1945 to such date as plaintiff could reasonably have completed the building after the contractor quit work; provided that as to such liquidated damages the amount adjudged against the bonding company shall not exceed $35,000, or 10 per cent of the amount of the bond." The only record made by the defendants is that, "Both defendants except to the giving of said instruction." Rule 51 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides in part that, "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." Defendants now urge that the instruction is mandatory in form and inapplicable under the evidence. The failure to particularize grounds of objection below so as to give the trial court an opportunity of correcting the instruction if erroneous and to advise opposing counsel, precludes review on appeal. Terminal R. Ass'n v. Schorb, 8 Cir., 151 F.2d 361; Mill Owners Mutual Fire Ins. v. Kelly, 8 Cir., 141 F.2d 763. The record is insufficient in this regard to present any question for review.

■ Defendants urge that the court erred in allowing the introduction of plans and specifications of the so-called Wheatley rice drier. The construction contract provided that the plans and specifications "will be in sum and substance the same as

those prepared for the Wheatley plant of the Arkansas Rice Growers Association." The court permitted the plans and specifications of that plant to be produced in evidence. This we think can not be seriously urged as prejudicial error. The jury could not have been misled into awarding damages for failure to perform any other than the contract between the plaintiff and the defendant contractor. This was made very clear by the court's instructions.

The refusal of the court to give requested instructions is urged as error but the basis of the contention in this regard is the same as that already considered and in effect was whether the evidence of plaintiff's experts or those of defendants was to be believed, and the requested instructions were manifestly intended to influence the jury to accept the evidence of defendants as against that of plaintiff and were properly refused.

We are of the view that the record discloses no prejudicial error and the judgment appealed from is therefore affirmed.