## ST. LOUIS–SAN FRANCISCO RY. CO. v. PASSMORE.

### No. 13966.

United States Court of Appeals
Eighth Circuit.

Nov. 9, 1949.

E. G. Nahler St. Louis, Mo., and E. L. Westbrooke, Jr., Jonesboro, Ark., submitted brief for appellant.

Pace, Davis & Pace and Catlett & Henderson, Little Rock, Ark., submitted brief for appellee.

Before SANBORN, JOHNSEN, and COLLET, Circuit Judges.

SANBORN, Circuit Judge.

The only question properly presented by this appeal from a judgment in favor of the plaintiff (appellee) in an action for wrongful death is whether the evidence made a case for the jury.

The plaintiff alleged in her complaint that the death of her intestate was caused by the negligence of the defendant. This the defendant denied. The defendant asserts that the District Court erred in denying its motion for a directed verdict, made at the close of the evidence.

There is no substantial dispute as to the facts. Charles D. Johnson was the sixteen year old son of Lavada Passmore. He died on May 13, 1947, under the wheels of one of the defendant's coal cars on its side track which served the gravel plant operated by the East Arkansas Construction Company in Jonesboro, Arkansas. He was employed by the Construction Company. His duties included cleaning out cars which were to be loaded with gravel from a ramp or loading platform. The ramp was close to the side track which ran east and west and sloped to the east. The switch engine of the defendant could not pass the plant. In setting cars in for loading, the engine would push them in from the east and would come within about a half car-length from the plant, and then uncouple and back out. If more than eleven cars were set in, Alice Street, which is west of the plant, would be blocked. It was necessary and customary for the switchman of the defendant to protect the crossing at Alice Street while cars were moving across it, and thereafter to free the crossing for travel by causing the cars which obstructed it to be moved toward the west. The Construction Company had a tractor which

was used in moving the cars after they were set in for loading. On the day of the accident, the defendant's engine crew brought in sixteen cars, five of which extended west of the easterly line of the Alice Street crossing. The switchman protected the crossing while the cars were moving over it. Johnson was on the ramp or loading platform of the gravel plant, waiting to clean out the cars when they were spotted. When the cars stopped, the switch engine left. To free the crossing at Alice Street, it was necessary to move the five westerly cars farther toward the west. The switchman uncoupled this cut. He fastened the hook of the cable attached to the tractor of the Construction Company to the east end of the fifth car from the west and signalled the tractor driver, an employee of the Construction Company, to pull the cars to the west. When the cars had cleared the crossing, the switchman signalled the tractor driver to stop. The cable then slacked and the hook of the cable became unfastened from the car to which it had been attached. The switchman attempted to stop the cut from rolling down grade to the east by placing a piece of board, two inches thick and about three and one-half inches wide, lengthwise of the rail on the track and against a wheel of the easterly car. The cars knocked the board out and moved toward the east. On previous occasions the board had been used and had held the cars in place. The switchman then picked up the board and threw it crosswise under the same wheel which he had attempted to block. The wheel rolled over it. He then attempted to set the brake on the easterly car, but was unable to stop the cut, which collided with the eleven cars from which it had been detached. The collision set the eleven cars in motion. Johnson, who was apparently on top of one of the eleven cars, getting ready to clean it out, was thrown or fell between the cars and was run over.

■ It is obvious that the collision which caused the eleven cars to move was the cause of Johnson's being run over and killed. It is a fair inference that the impact caused him to fall. It cannot be held as a matter of law that a two-inch board placed between the rail and one wheel of a cut of five coal cars is a safe and sane way of preventing them from rolling down an incline, nor that to fasten a cable of a tractor to a car in such a way that it will become unfastened when the tractor stops, constitutes due care under such circumstances as existed in this case. Since reasonable and fair-minded men could honestly believe that the means employed by the defendant's switchman to prevent the cut of five cars from colliding with the cars from which it had been uncoupled were utterly inadequate, as was demonstrated by what occurred, the questions whether the switchman was negligent in his handling of the cut, and, if so, whether the death of Johnson was the proximate result, were clearly questions of fact for the jury and not questions of law for the court. "Where uncertainty as to the existence of negligence arises from a conflict in the testimony or because, the facts being undisputed, fair-minded men will honestly draw different conclusions from them, the question is not one of law but of fact to be settled by the jury. Richmond & Danville Railroad v. Powers, 149 U.S. 43, 45, 13 S.Ct. 748, 37 L.Ed. 642." Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 233, 74 L.Ed. 720.

■ The defendant seeks to challenge the accuracy of one of the court's instructions relative to the measure of damages. The only objection made by the defendant to the court's instructions was too general to preserve the point for review, under Rule 51 of the Rules of Civil Procedure for the United States District Courts, 28 U.S.C.A.

The judgment appealed from is affirmed.