**HANSEN v. ST. JOSEPH FUEL OIL &
MANUFACTURING CO. et al.**

No. 14033.

United States Court of Appeals
Eighth Circuit.

May 17, 1950.

Rehearing Denied June 13, 1950.

Charles M. Miller, Kansas City, Mo., for appellant.

Francis Smith, St. Joseph, Mo. (R. E. Culver, B. L. Kaufmann, W. J. Sherwood, and J. M. Garvey, St. Joseph, Mo., were with him on the brief), for appellees.

Before GARDNER, Chief Judge, and WOODROUGH and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

This appeal is from a judgment in an action brought by appellant against appellees to recover damages for injuries caused by a collision between an automobile operated by appellant and an oil truck owned and operated by appellees. Jurisdiction is based upon diversity of citizenship.

In his complaint, appellant (plaintiff below) charged appellees with negligence causing the accident, as follows: "Plaintiff states that on November 6, 1947, about 10:-30 A.M., near Smithville in Clay County, Missouri, he was driving an Oldsmobile automobile, which he owned, accompanied by his wife, Bertha Hansen, on State Highway No. 169, moving south on said highway on the concrete paved portion of the west side thereof designated and marked for southbound vehicles and traffic when an oil truck and motor vehicle owned and operated by the defendants above named and being operated on the concrete paved portion of said highway on the east side thereof for northbound motor vehicles and traffic negligently on a descending grade on said highway suddenly turned over while moving northward onto the concrete pavement marked and designated for southbound traffic and motor vehicles, and negligently, immediately collided with the automobile of plaintiff moving southward thereon, seriously injuring and damaging plaintiff's and his automobile and injuring his wife so that she later died as a direct result and seriously and permanently injuring plaintiff as hereinafter set forth."

Appellees, after denying appellant's charge of negligence, alleged that any injury or damage sustained by appellant was directly caused by appellant's contributory negligence in the following respects:

"(a) That the plaintiff Emil Hansen was driving an automobile in a southerly direction on Highway 169 in which automobile his wife, Elizabeth L. Hansen was riding as a passenger, and defendant Harvey Hoyt was operating a truck and trailer in a northerly direction on said highway approaching the vehicle of plaintiff; that in addition to the vehicle driven by the said Harvey Hoyt another automobile truck was being operated at said time and place in a north-bound direction on said Highway 169, referred to in plaintiff's petition, and approaching the vehicle operated by plaintiff, and plaintiff knew or, by the exercise of the highest degree of care, could or would have known that unless he, the said Emil Hansen, stopped or slowed his said vehicle or changed the course thereof, his vehicle would run into and collide with the vehicle driven by the said defendant, Harvey Hoyt, and the said Emil Hansen then and there carelessly and negligently failed to stop, to swerve or to slow his said vehicle or to change the course thereof and thereby caused or contributed to cause the vehicle of plaintiff to collide with the vehicle driven and operated by the said Harvey Hoyt.

"(b) That plaintiff negligently and carelessly failed and neglected to keep his automobile under control so as to prevent the collision with the vehicle operated by defendant Harvey Hoyt at said time and place when he saw or in the exercise of the highest degree of care could have seen the said Hoyt vehicle with which he collided in time to have stopped his automobile or to have checked or slackened the speed thereof or to have turned the same aside and thereby avoid said collision and the damages and injuries occasioned thereby, if any, all of which acts the said plaintiff negligently and carelessly failed so to do.

"(c) That plaintiff negligently and carelessly failed and omitted to exercise the highest degree of care to keep and maintain a careful and vigilant lookout for other vehicles on said highway at said time and place and failed to exercise the highest degree of care to avoid colliding with the truck operated by defendant Hoyt.

"(d) That at the time and place mentioned in evidence the vehicle driven by defendant Harvey Hoyt was proceeding northbound on said Highway 169 and at said time and place both it and another automobile truck were traveling in a northbound direction and approaching the vehicle driven by plaintiff, and although there was ample room for all three vehicles to pass each other in safety to said vehicles and their occupants, considering the highway and the level shoulders adjacent thereto, plaintiff carelessly and negligently swerved his vehicle from the west side of said highway and shoulder into the truck driven and operated by said Harvey Hoyt and thereby caused his said vehicle to collide with said truck."

The collision between the motor vehicles occurred in the forenoon of Thursday, November 6, 1947, near the bottom of a hill, referred to in the evidence as the Smithville Hill, on Highway 169, a heavily-traveled main highway. In this vicinity the highway runs north and south, is paved with concrete pavement 18 feet wide, with a black line dividing the southbound traffic lane from the northbound traffic lane. There are wide level dirt shoulders on each side of the concrete pavement. On appellant's side of the highway the shoulder is from 6 to 12 feet in width. From the crest of the Smithville Hill the highway descends a 5 per cent grade to the north for some distance, not stated in the evidence, to a level stretch approximately 800 feet long, then descends again on a 5 per cent grade for a distance also not shown by the evidence to a point where the highway levels off, several hundred feet from a bridge across the Little Platte River. Descending the Smithville Hill the highway makes an S curve. The operator of a motor vehicle descending the hill to the north comes out of this curve into the straightway at the beginning of the last descending grade on the hill.

The oil truck involved in the collision consisted of a tractor owned by appellee, Stevenson, and leased to appellee, St. Joseph Fuel Oil and Manufacturing Company, and a tank trailer owned by St. Joseph Fuel Oil and Manufacturing Company. The truck was driven by appellee Hoyt. The overall length of this combination was about 33 feet. At the time of the accident the tank was filled with fuel oil. The weight of the loaded vehicle was about 40,000 pounds. Its brake system is described in the evidence as "vacuum over hydraulic." Appellant Hansen was driving a 1937 Oldsmobile passenger car.

At the trial appellant testified that just before the accident he had crossed the bridge over the Little Platte River driving south at a speed of about 40 miles an hour. He fixed the point of the collision as being "a trifle across the bridge," "just a short ways" from the south end of the bridge. He did not see the oil truck moving north down the Smithville Hill until it appeared immediately in front of his car in the southbound traffic lane so close to his car that he was unable to avoid the collision by any means at his disposal. He never at any time saw another truck (known as the Monteer truck) which the evidence shows was proceeding down the Smithville Hill immediately ahead of appellee's oil truck just before the accident occurred. A witness for the appellant placed the point of the collision at about 200 feet south of the bridge over the Little Platte River. The driver of the Monteer truck, a witness for appellant, testified that as he was descending the Smithville Hill he looked in his rear view mirror and saw the oil truck coming down the hill behind him, and at the same time he saw appellant's car coming from the north. He said that the oil truck attempted to pass him "near the bottom of the hill." He knew that the oil truck was going to hit him or appellant's car. To save himself and to give the oil truck room to pass, he drove his truck completely off the pavement onto the shoulder of the highway

along his traffic lane. Just as the rear end of the oil truck passed the front end of his truck the collision occurred. The oil truck passed so close to his truck that the body of the tank trailer "sideswiped" the body of his truck and the rear bumper on the tank trailer struck his front bumper. He saw appellant turn his car onto the shoulder of the highway adjacent to the southbound traffic lane and suddenly turn it back onto the highway in front of the oil truck.

In a deposition taken before the trial and introduced in evidence by appellees, appellant gave the following testimony:

"Q. * * * Now, where were you driving along when you first saw the oil truck? Tell me about where you were. Were you driving on a hill or curve or straightaway? Tell me about it. A. I believe there's a little bend in the road, not a curve and no hill. Where I was at was pretty much on the level.

\* \* \* \* \* \*

"Q. You mean the oil truck was coming from the south? A. Yeh.

"Q. It was coming around a bend? A. Not a sharp bend, just a little—it ain't quite straight.

"Q. A gradual curve. A. Yeh.

\* \* \* \* \* \*

"Q. Was the curve on which he was traveling, was it coming uphill, downhill, or coming straight on a level stretch? A. I believe it was pretty much on the level.

\* \* \* \* \* \*

"Q. Do you know specifically, though, how fast you were going just before this accident happened? A. I think I was driving forty miles when it happened. I didn't see no speed limit sign. There was no speed limit sign that I seen. It was a good road; you could see for a quarter of a mile.

\* \* \* \* \* \*

"Q. Mr. Hansen, can you tell me this. Was there anything to prevent you from seeing the oil truck, any obstruction or anything to prevent you seeing the oil truck before you did? A. No. He could see me if he wanted to.

"Q. I am asking you if you saw anything at all to prevent you—A. Nothing between us.

"Q. I want to be clear about it. In other words, you are driving along an open highway? A. Yeh.

"Q. And here's this oil truck, you say, on your side? A. Yeh.

"Q. Right in front of you. Was there anything to prevent your seeing it before you did? A. No.

"Q. In other words, he didn't suddenly come on the highway at that time, did he, over on one side? A. I don't know why he come on the wrong side of the road, sir. I don't know that. He was on the wrong side but I couldn't tell you just how long he had been there."

For appellees, Hoyt testified that he had been driving the oil truck all the week preceding the accident, hauling fuel oil from a refinery near Kansas City, Missouri, to the place of business of the St. Joseph Fuel Oil and Manufacturing Company at St. Joseph, Missouri. On the day of the accident he left St. Joseph about 6 o'clock in the morning and arrived at the refinery near Kansas City at about 8 o'clock. He left the refinery about an hour later with a tank load of fuel oil. From Monday until just before the accident the brakes on the oil truck had been in good working order. He had covered a distance of about 30 miles on his return trip with the load of oil before the collision occurred. When he reached the top of the Smithville Hill Hoyt tested his brakes before starting on the downgrade to the north and found that the brakes were working perfectly. As he started down the hill he saw the Monteer truck before him. He again applied his brakes and found that they did not work satisfactorily. When he saw he was gaining on the Monteer truck and rapidly overtaking it, he applied his brakes for the third time and found that he had no braking power. Unable to check the speed of the oil truck, and to avoid running into the rear of the Monteer truck, he turned into the southbound lane of the highway just as he rounded the curve on the hill at the be-

ginning of the last descending grade. As he came around this curve he had a view of the highway to the north of approximately one quarter of a mile. He saw appellant's automobile just leaving the bridge over the Little Platte River about 1,000 feet distant from him. He began blinking his headlights as a signal to appellant that he was unable to control the truck. He increased his speed in order to pass the Monteer truck as quickly as possible. He estimated his speed at about 40 miles an hour when he started to pass the Monteer truck and the speed of appellant's approaching automobile at about 35 miles an hour. As he was passing the Monteer truck he saw appellant turn his car out onto the shoulder of the highway, come back on the highway, leave it again for the dirt shoulder, and just as the rear of the oil transport passed the front end of the Monteer truck he saw appellant suddenly turn back to the highway immediately in front of the oil truck, with the result that a collision was unavoidable, the front end of appellant's car striking the side of the tractor near the rear wheel. After the collision the oil truck continued a distance of six or eight hundred feet and stopped on the shoulder of the highway after crossing the bridge over the Little Platte River.

A Missouri highway patrolmen, who was called to the scene of the accident, testified that he examined the oil truck brakes after the collision. He found that the hose connection between the tractor and trailer was pulled loose, and that the left rear brake mechanism on the oil truck was also out of place. In the opinion of the witness the oil truck brakes were ineffective in this condition. Appellee Stevenson, who owned the tractor and who had been driving the oil truck the week preceding the week of the accident, testified that the brakes on the tractor were in perfect condition.

The court submitted the questions of negligence of the appellees and contributory negligence of the appellant to the jury, which returned a verdict for appellees on which judgment was entered.

On this appeal the appellant contends: (1) that the court erred in refusing appellant's motion for a directed verdict at the close of all of the evidence; (2) that the court's charge to the jury was so misleading and confusing as to require reversal; and (3) that the court committed reversible error in refusing to charge the jury as requested by appellant.

If we concede that the evidence was sufficient to support a finding by the jury that appellees were guilty of negligence as charged in the complaint, there still remained for the jury, even under appellant's own testimony, the question of his contributory negligence in failing to discover the oil truck in time to have avoided the collision, or in failing to make any effort to avoid the collision after he could have discovered the approaching oil truck by the exercise of the care required of him as the operator of an automobile on the same highway. Missouri law places upon the operators of motor vehicles the duty to exercise the highest degree of care. Section 8383, Mo.R.S.A. The driver of an automobile is held to the exercise of the highest degree of care for his own safety as well as for the safety of others. Failure of the operator of an automobile to see what could have been seen by observation in the exercise of the highest degree of care is negligence per se. A motorist observing another approaching him on the wrong side of the highway is guilty of failure to exercise the degree of care required of him if he fails to use the means available to him to avoid a collision. State ex rel. Kansas City Southern Ry. Co. v. Shain et al., 340 Mo. 1195, 105 S.W.2d 915, 918; Wininger v. Bennett et al., Mo.App., 104 S.W.2d 413, 414, 415; Rohmann v. City of Richmond Heights et al., Mo.App. 135 S.W.2d 378, 383; Jenicek v. Harrigan, Mo. App., 217 S.W.2d 764, 766; Wright et al. v. Osborn et al., 356 Mo. 382, 201 S.W.2d 935, 937, 938. From appellant's testimony the jury could have found that the collision occurred upon a level and fairly straight highway; that, as appellant crossed the bridge over the Little Platte River, he had a clear and unobstructed view ahead for a quarter of a mile; that in the exercise of even ordinary care for his own safe-

ty he must have seen the oil truck approaching him on the wrong side of the highway in time to have avoided the accident by reducing the speed of his car, by turning out upon the wide shoulder along his side of the highway, or by stopping his car.

■ There are two answers to appellant's criticism of the court's original charge to the jury. The first is that the appellant made no objection to the charge on the grounds now assigned for reversal. The second is that the court recalled the jury and corrected the language of the original charge which the appellant now contends made the charge so confusing as to require reversal.

■■ In his original charge the court, when instructing the jury on the questions of negligence of appellees and contributory negligence of appellant, and in stating the degree of care required of them in the operation of their motor vehicles, used the word "plaintiff" where he intended to refer to the defendant and the word "defendant" where he meant to say "plaintiff." The transposition of the words "plaintiff" and "defendant" occurred in so many instances in the court's charge that, if the court had refused to correct the resulting confusion at the request of either of the parties, a verdict against the objecting party could not have been permitted to stand. But when the court at the conclusion of the charge invited counsel for the parties to state their objections, counsel for appellant made no objection to the matters of which he now complains. When counsel for the appellees directed the court's attention to the confusion in terms in the charge, the court recalled the jury and instructed them as follows:

"Ladies and gentlemen of the jury, it has been called to the attention of the Court that the Court made an error in referring to the parties; a slip of the tongue, so to speak. So that there may not be any confusion about it, the plaintiff in this case is charged with ordinary care with respect to the matters which the Court discussed.

"The defendants are charged with the highest degree of care in the operation of the tank. In other words, a person who operates a motor vehicle upon the highway is charged with the highest degree of care, but in the matter of contributory negligence, as is alleged in this case against the plaintiff, he is charged with ordinary care in protecting himself in the manner which the Court has charged.

"Is that clear to the members of the jury? Any confusion about it?

"In other words, the two degrees, the 'highest degree of care' is placed upon the defendants, and 'ordinary care' upon the plaintiff."

Without objection appellant and appellees accepted this clarification of the court's original charge as sufficient, and the jury retired. The appellees might have objected on the ground that the court erred in favor of appellant in his statement of the law as to the degree of care required of appellant. See Missouri cases, supra.

"Where the court has given an erroneous instruction, it may be withdrawn or explained by the court so as to remove error which otherwise might be present. But the withdrawal must leave no doubt in the minds of the jury as to what the court ultimately declares the law to be." Chicago, B. & Q. R. Co. v. Kelley, 8 Cir., 74 F.2d 80, 84, 85. In the absence of any objection on the part of appellant, we think the court in his effort to correct the original instruction met the test of this case. Moreover, the jury later returned to ask "clarification of some points" in the court's charge. The following proceedings were had:

The Foreman: "If both parties are found to be negligent, is it possible to return a damage in favor of the plaintiff?"

The Court: "I think you will recall the Court's instruction was that if the plaintiff was guilty of contributory negligence—that is 'negligence' as defined by the Court to you within the limitations that the Court also described to you—if plaintiff was guilty of contributory negligence under those conditions, it would defeat his recovery."

The Foreman: "I didn't get the last."

The Court: "It would defeat his recovery if he were guilty of contributory negligence which contributed to the happening of the injury, then he would not be able to recover."

The Foreman: "Yes, sir."

■ This second clarification of the original charge to the jury was sufficient to remove from the minds of the jury any doubt as to what the court declared the law in the case to be. Appellant's only objection to this charge was that the evidence in the case did not warrant the submission of the question of appellant's contributory negligence, and that the court's answer to the question propounded by the jury was too broad and might be misleading and confusing. As we have seen the question of contributory negligence was clearly for the jury. The general objection that the court's statement on the subject was too broad and might be misleading presents nothing for review by this court. Detroit Edison Co. v. Stricker et al., 6 Cir., 65 F.2d 126, 127; Hall v. Aetna Life Ins. Co., 8 Cir., 85 F.2d 447, 450; Rule 51, Federal Rules of Civil Procedure, 28 U.S.C.A.

■ Appellant's remaining ground for reversal is the refusal of the court to charge the jury as requested by appellant. There were five of these requests. The objection and the court's ruling relied on by appellant are as follows:

Mr. Miller: "May it please your Honor, on behalf of the plaintiff I take it the Court will allow us exceptions to such of the charges as we have heretofore requested of your Honor, insofar as they are in conflict with what your charge has been to the jury."

The Court: "Those instructions have been marked 'refused' and will be deposited with the clerk."

The Federal courts have always held that an objection in the language quoted presents nothing for an appellate court to review, because it does not indicate specifically wherein the charge given by the court failed to include the law as requested or to point out precisely the alleged conflict between the requests refused and the charge given. Beaver v. Taylor, 93 U.S. 46, 55, 23 L.Ed. 797; American Sugar Refining Company v. Nassif, 1 Cir., 45 F.2d 321, 326; Detroit Edison Co. v. Stricker et al., supra; Hall v. Aetna Life Ins. Co., supra; O'Connor v. Ludlam, 2 Cir., 92 F. 2d 50, 54. Rule 51 of the Federal Rules of Civil Procedure, which provides that "No party may assign as error the giving or the failure to give an instruction unless he objects thereto * * * stating distinctly the matter to which he objects and the grounds of his objection," is but a statement of what Federal courts have said prior to the adoption of the rules. The reason for the rule is that fairness to the trial court and to the parties to an action requires that "objections to a charge must be sufficiently specific to bring into focus the precise nature of the alleged error." Palmer v. Hoffman, 318 U.S. 109, 119, 63 S.Ct. 477, 483, 87 L.Ed. 645, 144 A.L.R. 719; Hall v. Aetna Life Ins. Co., supra; Krug v. Mutual Benefit Health & Accident Ass'n, 8 Cir., 120 F.2d 296, 301. The objection relied on by appellant in this case failed to direct the attention of the trial court specifically to the alleged points of conflict between the court's charge and the law as stated in appellant's requests. Neither this court nor the trial court is under the duty of assuming the burden of comparison and analysis of the charge given and the instructions requested which appellant attempts to place upon them.

The judgment of the District Court is affirmed.