256 F.2d 297
 Harold L. HOLLIDAY, Jr., a Minor, by Harold L. Holliday, Next Friend, and James O. Draffen, a Minor, by Ernest Draffen, Next Friend, Appellants,
v.
GREAT ATLANTIC & PACIFIC TEA COMPANY, a Corporation, Appellee.
 No. 15909.
 United States Court of Appeals Eighth Circuit.
 June 5, 1958.
 
 Harold L. Holiday, Kansas City, Mo. (Lee Vertis Swinton, Kansas City, Mo., was with him on the brief), for appellants.
 Fred Bellemere, Jr., Kansas City, Mo. (Bellemere & Bellemere, Kansas City, Mo., was with him on the brief), for appellee.
 Before GARDNER, Chief Judge, and VOGEL and MATTHES, Circuit Judges.
 GARDNER, Chief Judge.
 
 
 1
 This appeal is from a judgment for the defendant based upon a jury verdict in an action in which appellants as plaintiffs sought to recover damages upon three causes of action. We shall refer to appellants as plaintiffs.
 
 
 2
 Plaintiffs are minors and brought their action by and through their fathers as next friend. In their joint complaint each plaintiff charged (1) false imprisonment, (2) slander and (3) assault and battery. The defendant by its answer denied the allegations contained in each of the counts of plaintiffs' complaint but alleged that if the events as alleged in the complaint did take place the defendant was justified in doing what it is alleged to have done and there was justifiable cause for its alleged actions.
 
 
 3
 Defendant is a corporation and at and prior to the occurrence of the events here involved owned, maintained and operated a grocery store at 3812 East 27th Street in Kansas City, Missouri. The plaintiffs are teen age minors, each being about twelve years of age. They were classmates in public school. The grocery store of defendant was located about one-half block east of the school which they were attending. At the noon lunch period on the day here involved they went to the defendant's store for the alleged purpose of purchasing some candy. Their version as to what occurred is substantially as follows:
 
 
 4
 Upon entering defendant's store they walked around a bit, examined some of the merchandise on various shelves and also got a drink of water from the water fountain. Plaintiff Draffen had his hands in his jacket pocket while walking around the store. Thereafter they went to the rack where candy bars were kept and plaintiff Draffen took his hands out of his pocket, took two candy bars from the candy rack and put his hands and the candy in his jacket pocket. The candy rack was some fifteen to twenty feet from the checkout stands which were located in the front part of the store behind a large plate glass window. Upon selecting the candy bars desired the plaintiffs went directly to the checkout stand. Plaintiff Draffen took the candy bars out of his pocket, placed them before the checker, gave the checker ten cents, picked up the candy bars, returned them to his pocket and prepared to leave the store. During all the time he was accompanied by plaintiff Holliday. Upon taking approximately one step toward leaving the store and while they were still in the aisle before the checkout stand, plaintiffs were approached from the rear by one of defendant's employees. Plaintiff Draffen said that the employee who approached him was one whom he had previously seen working at the vegetable rack, that he was about five feet eight inches tall and had blond hair. On this occasion he did not recall the color of the trousers that he had on but did recollect that he had on a white shirt and white apron. Defendant's employee pulled both plaintiffs backwards toward the rear of the store and out of the checkout aisle, told plaintiff Draffen that he had not paid for his candy and proceeded to search both plaintiffs, requiring them to unbutton their coats and jackets and hold their hands up over their heads while he conducted his search. He then told plaintiff Draffen that he had not paid for his candy and plaintiff Draffen replied that he had. After holding the boys in the store and having completed his search defendant's employee then questioned the checker as to whether the candy had been paid for and upon being advised by the checker that the candy had been paid for the boys were released and permitted to go about their business.
 
 
 5
 With two exceptions, the employees of the store testified that although present in the store at the time they had no knowledge of any incident of the nature testified to by plaintiffs. Charles Harrison testified that at that time his job was marking vegetables at the store; that while leaving for lunch one day he noticed two boys at the candy rack; that the boys started out in the back of the checkstand line; that he nodded to Mr. Mitchell, the manager, who was in the office; that the boys saw him and came out from the check line and went back around the bar, between that and the soda pop rack; that he told the boys that the girl would take care of them and check on them; that Mr. Mitchell stepped out of the office and told the boys the girl would take care of the checks; and that that was the only incident he could recall at about that time. He also testified that he was the only man in the store who knew anything about the incident except Mr. Mitchell, the manager; that he did not molest the boys; that he had never observed two colored boys about twelve years of age being stopped, detained or searched on the date in question and that he had not heard of any such incident in the store until this action was brought.
 
 
 6
 Carleton Mitchell testified that he was the manager of defendant's store at the time in question; that he did not see any colored boys about twelve years old stopped, detained or searched for taking candy on or about December 7, 1955, nor had he heard of any such incident until this lawsuit was filed; that he had discussed the matter with all of his employees and that none had any knowledge of any such incident; that he had heard Mr. Harrison testify and recalled the incident that Mr. Harrison was discussing; that he noticed Mr. Harrison was behind two boys heading toward the front of the store; that they don't have any particular signal but that he determined something was amiss and at that time Mr. Harrison hit at his pocket or at least appeared to do so; that he looked down, saw the two boys, opened the office door, leaned out, took one step and said, "Boys, they will check you out over at the checkout stand"; that he looked up again and the boys were in the checkout stand and that was all there was to it; that he did not see them detained, pulled back or searched after they got to the checkout stand and that they never do that. On cross-examination he testified: "We have never stopped anybody for taking anything in the store. We have detained people outside of the store. In the incident that I have described only Harrison and I have any knowledge of it."
 
 
 7
 At the close of all the testimony defendant moved for a directed verdict. The motion was denied as to the counts alleging false imprisonment and assault and battery but sustained as to the counts alleging slander. As thus limited the issues were submitted to the jury and the jury returned a verdict in favor of defendant on all the issues submitted and the court thereupon entered judgment dismissing the action on its merits.
 
 
 8
 Plaintiffs, not having moved for a directed verdict at the close of all the testimony, cannot now challenge the sufficiency of the evidence as to the issues submitted to the jury and we do not understand they are attempting to do so. They, however, challenge the ruling of the court in sustaining the defendant's motion for a directed verdict on the issue of slander and they challenge the ruling of the court on the question of the admissibility of evidence in one particular only. In their "Points to be Argued" they allege that, "The court erred in its refusal to admit evidence, or to submit instructions as to punitive damages on all counts". At no place in the brief is there a citation to the record where such an alleged ruling may be found. Rule 11(b) of the Rules of this Court, 28 U.S. C.A., which relates to the contents of appellants' brief provides:
 
 
 9
 "If a point relates to the admission or exclusion of evidence, the statement shall quote the evidence referred to, and any objections or other equivalent action taken relative thereto, together with the rulings of the court thereon, giving the pages of the printed record on which the quotations appear."
 
 
 10
 Nowhere in appellants' brief is there set out any interrogatories, objections, or rulings rejecting any evidence offered by the plaintiffs; neither is there any citation to the record as to any such ruling. This attempt to challenge the ruling of the court presents no basis for decision. Chicago, Great Western Railway Co. v. Scovel, 8 Cir., 232 F.2d 952.
 
 
 11
 In connection with this attempt to challenge the ruling of the court in rejecting evidence plaintiffs urge that the court erred in its instruction withdrawing from the consideration of the jury the question of punitive damages. Of course, punitive damages can only be recovered where there is a basis for a recovery of compensatory damages. Durham v. New Amsterdam Cas. Co., 4 Cir., 208 F.2d 342; State ex rel. St. Joseph Belt Ry. Co. v. Shain, 341 Mo. 733, 108 S.W.2d 351; Spitzengel v. Greenlease Motor Car Co., 234 Mo.App. 962, 136 S.W.2d 100; Lindstrom v. Kansas City Southern Ry. Co., 202 Mo.App. 399, 218 S.W. 936. The question goes only to elements that may be considered in fixing the amount of damages. Here the jury found that plaintiffs were not entitled to recover any compensatory damages and hence plaintiffs could not possibly be injured by withdrawing from the jury's consideration, if that was done, the question of punitive damages.
 
 
 12
 But there are other reasons why this question is not properly before us. The instruction referred to was not excepted to in a manner which presented this matter to the trial court. Rule 51, Federal Rules of Civil Procedure, 28 U.S. C.A.; Jack v. Craighead Rice Milling Co., 8 Cir., 167 F.2d 96; St. Louis-San Francisco Ry. Co. v. Passmore, 8 Cir., 177 F.2d 550; Hansen v. St. Joseph Fuel Oil & Manufacturing Co., 8 Cir., 181 F.2d 880; Palmer v. Miller, 8 Cir., 145 F.2d 926; Krug v. Mutual Ben. Health & Accident Ass'n, 8 Cir., 120 F.2d 296. The record shows that the only objections made or exceptions saved to the instructions as given to the jury were as follows:
 
 
 13
 "Whereupon plaintiff objected and excepted to the instructions given by the court relating to the right of the owner of the premises to detain persons thereon and to the giving of the instruction to the effect that force may be used under certain circumstances and to the withdrawing from the consideration of the jury of counts 2 and 5, and to the refusal of the court to charge with references to penalty damages as to counts 1, 3, 4 and 6. Whereupon the defendant objected to the court's giving of the changes requested by the plaintiff as regards to counts 1, 3, 4 and 6.
 
 
 14
 "Exceptions were noted by the court."
 
 
 15
 Rule 51, Federal Rules of Civil Procedure, supra, so far as here pertinent, provides as follows:
 
 
 16
 "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." (Italics supplied.)
 
 
 17
 In Jack v. Craighead Rice Milling Co., supra [167 F.2d 103], in holding that the objection interposed to an instruction was insufficient to entitle the appellant to a review of the question in this court we said:
 
 
 18
 "The failure to particularize grounds of objection below so as to give the trial court an opportunity of correcting the instruction if erroneous and to advise opposing counsel, precludes review on appeal."
 
 
 19
 The matter was again before us in St. Louis-San Francisco Ry. Co. v. Passmore, supra [177 F.2d 551], and in the course of the opinion in that case it is said:
 
 
 20
 "The defendant seeks to challenge the accuracy of one of the court's instructions relative to the measure of damages. The only objection made by the defendant to the court's instructions was too general to preserve the point for review, under Rule 51 of the Rules of Civil Procedure for the United States District Courts, 28 U.S.C.A."
 
 
 21
 In Hansen v. St. Joseph Fuel Oil & Manufacturing Co., supra [181 F.2d 886], in an opinion by the late Judge Riddick, speaking for this court, the question was again considered and, we hoped, put to rest. In the course of that opinion it is said:
 
 
 22
 "The Federal courts have always held that an objection in the language quoted presents nothing for an appellate court to review, because it does not indicate specifically wherein the charge given by the court failed to include the law as requested or to point out precisely the alleged conflict between the requests refused and the charge given. Beaver v. Taylor, 93 U.S. 46, 55, 23 L.Ed. 797; American Sugar Refining Company v. Nassif, 1 Cir., 45 F.2d 321, 326; Detroit Edison Co. v. Stricker, supra [6 Cir., 65 F.2d 126]; Hall v. Aetna Life Ins. Co., supra [8 Cir., 85 F.2d 447]; O'Connor v. Ludlam, 2 Cir., 92 F.2d 50, 54. Rule 51 of the Federal Rules of Civil Procedure, which provides that `No party may assign as error the giving or the failure to give an instruction unless he objects thereto * * * stating distinctly the matter to which he objects and the grounds of his objection,' is but a statement of what Federal courts have said prior to the adoption of the rules. The reason for the rule is that fairness to the trial court and to the parties to an action requires that `objections to a charge must be sufficiently specific to bring into focus the precise nature of the alleged error.' Palmer v. Hoffman, 318 U.S. 109, 119, 63 S.Ct. 477, 483, 87 L.Ed. 645, 144 A.L.R. 719; Hall v. Aetna Life Ins. Co., supra; Krug v. Mutual Benefit Health & Accident Ass'n, 8 Cir., 120 F.2d 296, 301. The objection relied on by appellant in this case failed to direct the attention of the trial court specifically to the alleged points of conflict between the court's charge and the law as stated in appellant's requests. Neither this court nor the trial court is under the duty of assuming the burden of comparison and analysis of the charge given and the instructions requested which appellant attempts to place upon them."
 
 
 23
 The objections interposed in the instant case did not distinctly state any grounds for the objections. The trial court was given no opportunity to correct or cure any possible defect or error in the instructions as given. The objections do not even tell us the matter to which they object in the questioned instructions and certainly do not state the grounds of their so-called objections. This is an appellate court and before we can properly say that the trial court was in error that court must have been given an opportunity to pass upon the question. Alleged errors cannot for the first time be urged in this court.
 
 
 24
 It is finally urged that the court erred in directing a verdict for defendant on the issue of slander. Each plaintiff pleaded that:
 
 
 25
 "* * * while plaintiffs were in defendant's store for the purposes aforesaid, the defendant, its agents, servants and employees did wrongfully, wantonly and maliciously spoke of and concerning the plaintiff certain defamatory and slanderous words, to-wit: that plaintiff had stolen some of defendant's merchandise, whereby plaintiff has been greatly injured in his good name and fame to his damage in the sum of $2,500.00 actual damages and by reason of the malicious and wanton acts and conduct of defendant, its agents, servants and employees, defendant should be required to pay plaintiff in addition to the actual damages aforesaid, punitive damages in the sum of $10,000.00."
 
 
 26
 In an action for slander or libel the words alleged to be defamatory must be pleaded and proved. It is also essential that it be alleged that the accusation was untrue. Fritschle v. Kettle River Co., 346 Mo. 196, 139 S.W.2d 948; Atterbury v. Brink's Express Co., Mo.App., 90 S.W.2d 807. In Fritschle v. Kettle River Co., 346 Mo. 196, 139 S.W.2d 948; River Co., supra [346 Mo. 196, 139 S.W. 2d 950], the Supreme Court of Missouri states the rule with reference to the sufficiency of the pleading and proof in an action for libel or slander as follows:
 
 
 27
 "Because of plaintiff's failure to set out any words claimed to have been used and because of his failure to allege that the statement made was false, we hold that the trial court properly sustained defendants' demurrers."
 
 
 28
 The actual words allegedly used by defendant's employee are not set out but only plaintiffs' conclusion as to the import as to whatever words may have been used. It is to be observed too that it is not alleged that the allegedly defamatory words used were false.
 
 
 29
 Quite aside from the sufficiency of the complaint to charge actionable slander, a communication made by one under circumstances indicating good faith in the discharge of his duties is qualifiedly privileged. Kroger Grocery & Baking Co. v. Yount, 8 Cir., 66 F.2d 700, 92 A.L.R. 1166; Massee v. Williams, 6 Cir., 207 F. 222; Montgomery Ward & Co. v. Watson, 4 Cir., 55 F.2d 184. In Kroger Grocery & Baking Co. v. Yount, supra, the facts are somewhat similar to those in the case at bar. In that case the plaintiff charged defendant with slander in that it had accused plaintiff of taking a package from its store without having paid therefor. In discussing the sufficiency of the evidence to sustain a verdict for slander it is among other things said [66 F.2d 702]:
 
 
 30
 "It is important to consider whether or not the statments made by Ranchetto were, as claimed by defendant, qualifiedly privileged. If they were, then they are relieved of the presumption of malice, and to entitle plaintiff to recover it would be necessary to produce proof from which the jury might properly have found them to be malicious. A communication made in good faith by any person in the discharge of his duty, either legal or moral, is qualifiedly privileged and actionable only on proof of actual malice.
 
 
 31
 * * * * * *
 
 
 32
 "In the instant case it was the duty of Ranchetto, as manager of the store of defendant, to prevent customers from taking articles of merchandise without paying for them. We must view the situation as it appeared to him at the time of making the statements complained of, and not in the light of later developments.
 
 
 33
 * * * * * *
 
 
 34
 "Ordinarily, actual or express malice may be shown by evidence of previous ill will, hostility, threats, rivalry, former libels or slanders, and other circumstances or actions emanating from the defendant. The burden of proof on this issue was upon the plaintiff. * * *
 
 
 35
 * * * * * *
 
 
 36
 "Ranchetto could have had no reason to make the accusation which he made, except as it appeared to him to be his duty so to do in the interest of his employer. Plaintiff, as has been observed, created the appearance of attempting to purloin this package of crackers. * * *
 
 
 37
 "Plaintiff insists, however, that the answer of the defendant did not sufficiently plead the privilege. This deserves only passing notice, because it was essential to plaintiff's recovery that she plead and prove express or actual malice, in order to recover."
 
 
 38
 Having in mind that we must view the situation as it appeared to defendant's employee Harrison, it is to be observed that both the plaintiffs and Mr. Harrison testified that plaintiff Draffen picked up two candy bars and at once concealed them in his pocket. He not only took exclusive possession of the property but at once concealed it, certainly giving the appearance of shoplifting. In the instant case there was no proof of any facts from which it could reasonably be found that the words allegedly spoken were actuated by actual or express malice on the part of defendant and in the circumstances in this case the burden of proving actual or express malice was upon the plaintiffs. As said in Massee v. Williams, supra [207 F. 230]:
 
 
 39
 "Honest indignation and want of sound judgment on the part of the defendant and his employment of strong words, if he thought them justified, were not evidence of malice."
 
 
 40
 We conclude that the communications or statements made by the defendant's employee alleged to be defamatory were qualifiedly privileged and there was no proof from which malice might be inferred. It follows that the court properly directed a verdict in favor of defendant on the charge of slander.
 
 
 41
 On consideration of the entire record we are convinced that the plaintiffs had a fair trial and that there has been no miscarriage of justice. The judgment appealed from is therefore affirmed.