WILLIAM ACKERMAN v. FRANK A. THOMPSON, Trustee of the ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, a Corporation, Appellant.—No. 40052.—202 S. W. (2d) 795.

Division One, May 12, 1947.

Rehearing Denied, June 9, 1947.

*M. G. Roberts, E. G. Nahler, Thos. E. Deacy* and *Milligan, Kimberly & Deacy* for appellant.

560

*Ira B. Burns* and *Dwight Roberts* for respondent.

562

DOUGLAS, P. J.—This is a suit for damages against the Trustee of the St. Louis-San Francisco Railway Company, a corporation, arising out of a statute requiring a corporation to give an employee a service letter when the employee is discharged or quits the service of the corporation.

Plaintiff entered the service of the Kansas City, Clinton & Springfield railroad as a locomotive fireman on July 14, 1913, and was promoted to engineer on September 26, 1920. In 1924 that railroad was absorbed by the St. Louis-San Francisco Railway Company. Plaintiff continued in the service of the Frisco as engineer and fireman until January 16, 1932, when he was cut off in a force reduction but worked extra as brakeman between January, 1932 and June 1, 1935. On the latter date he was notified by the Frisco his record was closed, and his services no longer required due to the abandonment of the former Kansas City, Clinton & Springfield railroad line.

A notice on the bulletin board addressed to all trainmen and enginemen who were working on the abandoned line notified them to turn in transportation and company property. The notice was signed by the acting roundhouse foreman. When plaintiff turned in his switch key, book of rules, card and passes to him, plaintiff asked for a service letter. The acting foreman's reply was he could not give plaintiff a service letter and for plaintiff "to stay off the right-of-way, get off the right-of-way and clear off, I don't want to see you any more." Plaintiff later asked the roundhouse foreman for a service letter, which was refused.

Plaintiff and the other former employees of the abandoned road who had also been discharged were anxious to obtain any sort of employment on the railroad so as to preserve their retirement benefits under a Federal act soon to take effect. They appointed a committee of three to speak for them in obtaining employment and in requesting a service letter. The chairman of the committee made such request of the superintendent who had been immediately in charge of plaintiff, the master mechanic, and the chief operating officer, but never obtained a service letter from any of them. The chairman of the committee testified the superintendent would not do anything for them for the reason the chairman as legislative representative of the firemen had worked against him, and the superintendent had described him as an agitator and trouble maker.

After his discharge plaintiff applied for work at two offices of another railroad. He testified his applications were refused because he could not furnish a service letter. He worked for a short time with the construction company tearing up the roadbed of the abandoned railroad. After that he worked in a poolhall at a wage of $20 per week. Finally, in 1942 he obtained a job as a trainman on the M. K. & T. Railroad where he was employed at the time of the trial.

564

He obtained a judgment for $5,000 actual damages, and $4,000 punitive damages from which defendant appealed.

Plaintiff bases his right to recover on the service letter statute of 1929. Sec. 4588, R. S. 1929 (now Sec. 5064, R. S. 1939, Mo. R. S. A. which was amended in 1941). The statute was as follows: ''Whenever any employee of any corporation doing business in this state shall be discharged or voluntarily quit the service of such corporation, it shall be the duty of the superintendent or manager of said corporation, upon request of such employee (if such employee shall have been in the service of said corporation for a period of at least ninety days), to issue to such employee a letter, duly signed by such superintendent or manager, setting forth the nature and character of a service rendered by such employee to such corporation and the duration thereof, and truly stating for what cause, if any, such employee has quit such service; and if any such superintendent or manager shall fail or refuse to issue such letter to such employee when so requested by such employee, such superintendent or manager shall be deemed guilty of a misdemeanor, and shall be punished by a fine in any sum not exceeding five hundred dollars, or by imprisonment in the county jail for a period not exceeding one year, or both such fine and imprisonment.''

 The petition stated a cause of action under the statute. It alleged plaintiff was continuously in the employ of the railway company and the trustees from June 15, 1924 until his discharge on or about July 1, 1935. While plaintiff's testimony revealed that in the last couple of years he was not called for work daily, still he held himself available for work when needed and did extra work when called. We hold this satisfies the requirement of the statute as construed by Barrows v. Riss & Co. (Mo. App.), 179 S. W. (2d) 473 that the specified ninety-day period of service has reference to a continuous employment of at least ninety days. Words are flexible. Although not working daily, there is no question but that plaintiff continued in the ''service'' of defendant until he was discharged. Defendant itself stated in a letter that between January, 1932 and June 1, 1935 plaintiff worked extra as a brakeman and on the latter date plaintiff was notified his record was closed and his services no longer required.

 The petition also alleges a demand for a service letter was made upon ''the management of said railway company and its officers, managers and superintendent.'' Defendant's argument that this is not a sufficient allegation of demand upon the present trustee or his predecessor trustees is not well taken. The then co-trustees were managing the railroad. See Chrisman v. Terminal R. R. Assn., 237 Mo. App. 181, 157 S. W. (2d) 230, certiorari denied; State ex rel. v. Hughes, 350 Mo. 869, 169 S. W. (2d) 328.

■ However, defendant contends the service letter statute, applicable by its terms to a corporation, may not be held to apply to a trustee in bankruptcy of a railroad corporation.

The railroad was put first in receivership by the United States District Court for the Eastern District of Missouri. A single receiver was appointed, then a co-receiver was appointed. By the order appointing the receiver he was required "To manage and operate said railroads and property according to the requirements of the valid laws of the various states in which said railroads are situated, in the same manner that the railway company would be bound to do if in possession thereof." This is likewise the statutory duty of a receiver. Title 28 U. S. C. A., sec. 124. Later on the receivers were named as trustees of the railroad under the terms of Section 77 of Chapter 8 of the Acts of Congress relating to Bankruptcy. The order of the District Court appointing the trustees placed upon them the same powers and duties which had been given and required of the receiver. Upon the appointment of appellant as sole trustee he was given the rights and duties previously given the co-trustees.

Under these circumstances it is clear that appellant, now the sole trustee, is amenable to the service letter statute.

■ We have considered this question before in a companion case, which also sought to stop proceedings in this case as well, in a petition for prohibition seeking to prohibit the circuit court from proceeding with the trial because the statute, being applicable only to corporations, could not be made the basis of a claim against the trustees of a corporation. See State ex rel. Kurn v. Wright, 349 Mo. 1182, 1183, 164 S. W. (2d) 300. There we held the trustees were amenable to the service letter statute stating: "The [service letter] statute, ■ supra, is admittedly applicable to railroad as well as other corporations. If we entertained any doubt of the trustees' amenability to the statute, as an original proposition, it would be dispelled by force of the order of the federal court which was introduced by relators as a part of their case, and reported by the referee. It provides, inter alia, that the trustees shall 'manage and operate said railroads and property according to the requirements of the valid laws of the various states in which said railroads are situated, *in the same manner that the Railway Company would be bound to do if in possession thereof.*' (Italics ours.) That the alleged omission grows out of the trustees' management and operation of said railroad is not open to question."

Thus the point in question was previously precisely ruled and we are bound by that ruling on this appeal. That ruling is supported by Farrell v. The Union Trust Co., 77 Mo. 475 where this court held that under a penal statute directed against a railroad corporation damages could be adjudged against the defendant, a trustee, which was operating

the railroad. And see the annotation on the applicability of penal statutes to railroad receivers in 16 A. L. R., 1372.

█ The record does not show that plaintiff had obtained leave of the District Court to file this action. But such was not necessary. In Thompson v. Texas Mexican R. Co., 328 U. S. 134, 90 L. Ed. 1132 the court held under the circumstances existing there that leave did not have to be obtained to sue a railroad trustee in a state court. The court said: ''It is contended here, as it was in the state court, that the maintenance of the present suit is precluded by the stay orders issued by the bankruptcy court and by Sec. 77 of the Bankruptcy Act.

''Section 66 of the Judicial Code, 28 U. S. C. A., Sec. 125, 7 F. C. A., Title 28, Sec. 125, authorizes suits against the trustee, without leave of the bankruptcy court, 'in respect of any act or transaction of his in carrying on the business.' In McNulta v. Lochridge, 141 U. S. 327, 332, 35 L. Ed. 796, 800, 12 S. Ct. 11, this statute was said to grant an 'unlimited' right 'to sue for the acts and transactions' of the estate. Operation of the trains is plainly a part of the trustee's function. Claims which arise from their operation—whether grade crossing claims as in McNulta v. Lochridge (U. S.), supra, or claims for the use of the tracks of another as in the present case—are claims based on the acts of the trustee in conducting the business. Hence this suit, so far as it involves only a money claim against the estate for acts of the trustee in operating trains over respondent's tracks, could be maintained in the state courts against the trustee.''

The instant case is similarly a money claim based on an act of the trustee in conducting the business—that of discharging an employee without giving him a service letter. It was not necessary for plaintiff first to obtain leave to file this action. See Fullerton v. Fordyce, 121 Mo. 1, 25 S. W. 587.

█ Complaint is made the trial court permitted hearsay testimony to be given by plaintiff where he said that the official he applied to for a position on another railroad told plaintiff he would not hire plaintiff without a service letter. Under the circumstances we find here we hold this was not prejudicial error. Plaintiff had already testified the official had asked him for a service letter and he answered he had none. But of greater moment we find that plaintiff was permitted later to testify without objection of any sort that when he applied for work on the same railroad at another division point the official there told him ''I can't hire you without a service letter. Got to have a service letter to hire you.'' How can we say the jury relied on the testimony that was challenged instead of that which was the same except for the form of expression but was not challenged. The new Civil Code states: ''No appellate court shall reverse any judgment, unless it believes that error was committed by the trial court against the appellant, and materially affecting the merits of the action.''

Sec. 847.140 (b) Mo. R. S. A. 1939. In this instance we do not believe the trial court's error materially affected the merits of the action.

In plaintiff's measure of damage instruction the jury were told that if they found the refusal to give plaintiff the service letter was because of actual malice, then the jury had the right to consider the mental distress and mental suffering endured by plaintiff in awarding him compensatory damages. We find in 25 C. J. S., Damages, sec. 63, a general rule which appears to find support in a number of jurisdictions that: ''Mental pain and suffering proximately resulting from a wrong which in itself constitutes a cause of action is a proper element of compensatory damages.'' There can be no doubt but that mental pain and suffering is a proximate result of a wrong which affects a man's economic security and prevents him from earning a living for himself and family. On this point it is stated in 31 Am. Jur., Labor, sec. 73: ''The damages recoverable for illegal expulsion from a labor union are such as are the direct and proximate result of the expulsion, such as the loss of employment or the inability to secure employment at the plaintiff's trade in the locality where he was employed. The plaintiff may recover for the mental suffering . . . '' Cases allowing such damages in such cases are Nissen v. International Brotherhood, 229 Iowa, 1028, 295 N. W. 858, 141 A. L. R. 598, and St. Louis & S. W. Ry. of Texas Co. v. Thompson, 102 Tex. 89, 113 S. W. 144.

Particularly where the wrong was willful and malicious, damages for mental suffering have been allowed. In a well-reasoned opinion by Judge Goode discussing this subject at length he allowed such damages for maliciously keeping a man out of employment by wrongfully refusing him membership in a labor union. Carter v. Oster, 134 Mo. App. 146, 112 S. W. 995. In denying such damages because of the absence of malice this court said in Trigg v. The St. Louis, etc., Railway Co., 74 Mo. 147, 1. c. 153: ''The general rule is that 'pain of mind, when connected with bodily injury, is the subject of damages; but it must be so connected in order to be included in the estimate, unless the injury is accompanied by circumstances of malice, insult or inhumanity.' '' The St. Louis Court of Appeals followed this rule in allowing such damages for a disturbance of the peace by loud and unusual noises, curses, and abuse saying: ''The Trigg case has been recognized as a correct statement of the law in this state ever since its announcement, and the exception to the general rule then announced and often referred to.'' Voss v. Bolzenius, 147 Mo. App. 375, 128 S. W. 1. In Wilson v. St. Louis, etc., Ry. Co., 160 Mo. App. 649, 142 S. W. 775, the rule announced by the Trigg case is followed and a number of Missouri cases are cited in support. For cases from other jurisdictions which support the rule see Annotation 23 A. L. R. at 383.

In this case we find there was substantial evidence of actual malice. We hold plaintiff was entitled to recover damages for mental suffering, and that the instruction authorizing it was proper. There was also substantial evidence of legal malice which, coupled with the actual malice, more than supported the right to punitive damages. Other objections and complaints about other instructions are not well taken and are ruled against appellant.

The verdict is claimed to be excessive on both the $5,000 actual and $4,000 punitive allowances. Evidence was submitted from which the jury could have properly awarded a greater amount of actual damages for loss of earnings, without even taking into account the mental suffering. As to the allowance of punitive damages we find in a similar case the jury awarded $1 actual and $10,000 punitive, but the trial court cut the punitive allowance down to $4,000 which was approved by the Kansas City Court of Appeals. Lyons v. St. Joseph Belt Ry., 232 Mo. App. 575, 84 S. W. (2d) 933. And the St. Louis Court of Appeals approved an allowance of $3,000 punitive damages in a similar suit. Chrisman v. Terminal R. R. Assn., 237 Mo. App. 181, 157 S. W. (2d) 230. We do not feel we are justified in tampering with the allowances in this case.

The judgment is *affirmed*. All concur.