**Jim R. PORTERFIELD, Appellant,**

v.

**BURGER KING CORPORATION,**
**Appellee.**

**No. 75–1881.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 17, 1976.

Decided Aug. 19, 1976.

James W. Herron (argued), Mark T. Keaney, St. Louis, Mo., on brief, for appellant.

Robert H. Burns (argued), Clayton, Mo., on brief, for appellee.

Before BRIGHT, ROSS and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

This appeal concerns substantial actual damages awarded for a violation of V.A. M.S. 290.140,[1] the Missouri "service letter" statute, and punitive damages awarded for an allegedly libelous crime loss theft report in which the plaintiff claims he was falsely accused of being involved in the commission of a crime.

The two issues before us are whether the plaintiff established a submissible case on the question of substantial actual damages under the "service letter" statute, and secondly, whether the plaintiff established that the crime loss theft report was libelous. We affirm the district court's [2] determination that a submissible case was not created on either count.

Appellant Porterfield initially brought this action in the Circuit Court of the City of St. Louis, Missouri, in two counts, claiming actual damages from Burger King for a violation of V.A.M.S. 290.140 in the first count and punitive damages for a violation of the same statute in the second count. After removal to federal court, Porterfield filed an amended complaint, claiming in the

1. The statute provides in relevant part:

Whenever any employee of any corporation doing business in this state shall be discharged or voluntarily quit the service of such corporation, it shall be the duty of the superintendent or manager of said corporation, upon the written request of such employee to him, if such employee shall have been in the service of said corporation for a period of at least ninety days, to issue to such employee a letter, duly signed by such superintendent or manager, setting forth the nature and character of service rendered by such employee to such corporation and the duration thereof, and truly stating for what cause, if any, such employee has quit such service; and if any such superintendent or manager shall fail or refuse to issue such letter to such employee when so requested by such employee, such superintendent or manager shall be deemed guilty of a misdemeanor * * *.

2. The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri.

first count actual and punitive damages for a violation of the "service letter" statute and in the second count actual and punitive damages for defamation. The action was tried to a jury and a verdict was returned of $10,000 actual damages and no punitive damages on the first count. On the second count the jury returned a verdict of no actual damages but $50,000 punitive damages. Upon the motion of Burger King for judgment in accordance with motion for directed verdict on both counts, or for new trial, the district court determined that on the first count, the plaintiff failed to establish a submissible case on the question of substantial actual damages. Therefore, the district court ordered that the plaintiff be awarded $1 nominal damages. As to the second count, the district court determined that the plaintiff failed to make a submissible case on the question of whether the report was libelous. Therefore, it granted the defendant's motion for judgment in accordance with the defendant's motion for directed verdict. The defendant's motion for new trial was denied. This appeal followed the district court's determination as to each count.

The record discloses that Jim R. Porterfield was initially employed by Burger King Corporation as a manager trainee on December 13, 1971. Following a promotion to store supervisor, he became manager of the Burger King restaurant in Belleville, Illinois, from its opening in August of 1974 until December 6, 1974. On the latter date he was transferred to the Lemay, Missouri, restaurant.

In the early morning hours of December 30, 1974, a burglary occurred at the Belleville Burger King restaurant. There was no sign of any forced entry to either the restaurant or the safe. It was concluded by Burger King personnel that the theft apparently had been committed by someone who had a key to the restaurant and knew the combination to the safe. Upon dis-

covery of the burglary, the restaurant manager, with the aid of the assistant district manager, immediately prepared a crime loss theft report. This report is a business insurance report which Burger King's parent company, The Pillsbury Company, requires to be completed and mailed to its corporate insurance department. On the report under the heading "Names of Personnel Involved" appeared ten names. Porterfield's name was first on the list. Under the heading "Other Comments" the entry was made that "Polygraph Test Being Arranged." Burger King introduced evidence in the district court that Porterfield's name was placed on the list under "Names of Personnel Involved" because he had had a key to the restaurant as a prior manager, although it was clear that Porterfield had turned in his key several weeks prior to the burglary and there was no reason to believe that he had retained a key to the premises. Second on the list of ten names was the then restaurant manager whose responsibility it was to prepare and execute the report. The report also stated "Front Door Entry & Exit. Safe Opened By Person Unknown." [3] The report was mailed to The Pillsbury Company where it was read by at least two employees and retained in the company files. The contents of this report formed the basis of Porterfield's contention of defamation in the second count.

After the crime loss theft report had been prepared, it was reported to the district manager by another Burger King restaurant manager named Dietsch that Porterfield, on the night of the burglary, had commented to Dietsch how easy it would be to burglarize a Burger King restaurant. Porterfield did not deny in court that a conversation between him and Dietsch had taken place. Porterfield contended, however, that he had suspected Dietsch of a prior burglary and on this night he actually had been the one to accuse Dietsch. On January 3, 1975, Porterfield agreed to take a polygraph test but later changed his

---

**3.** This was a required report. Evidence was introduced by Burger King which showed that Porterfield's name had appeared on a prior crime loss theft report dated August 12, 1972, under the heading "Personnel Involved" since he was an employee of the burglarized restaurant at the time of that theft.

mind. When he was then suspended without pay for refusing to take the test, he agreed once again to be polygraphed. At this point he was told that the test would not make any difference and that his employment with Burger King was being terminated.

On January 9, 1975, pursuant to the statute, Porterfield requested a service letter from Burger King "setting forth * * * the reason, if any, why I was terminated." In response to that letter, Burger King responded in a letter dated April 19, 1975, in part as follows:

On the date of January 2, 1975, Mr. Porterfield's employment with Burger King Corporation was terminated. Mr. Porterfield's termination was directly related to the following sequence of events.

On October 8, 1974 Mr. Porterfield was given Two Thousand (2,000) 1974 Christmas Gift Certificates while he was the Restaurant Manager of the Burger King restaurant in Belleville. Mr. Porterfield, as well as the other restaurant managers, were given instruction sheets (Receipt and Verification of Certificates) outlining the procedures for proper handling of these gift certificates.

On a later date Mr. Porterfield's restaurant was audited relative to the number of gift certificates he was given. As this audit revealed inaccuracies relative to the number of gift certificates on hand, Mr. Porterfield was subsequently questioned as to the certificates' whereabouts. During the ensuing questioning, Mr. Porterfield admitted that he did not exercise the proper controls and procedures required in the appropriate handling of the gift certificates.

Additionally, Mr. Robert Smart, District Manager of St. Louis Burger King restaurants, had been informed of an alleged conversation that took place between Mr. Porterfield and Stephen Dietsch, former Restaurant Manager, on or about the date of December 29, 1974. During the alleged conversation, Mr. Porterfield discussed how easily he felt a Burger King restaurant could be burglarized. Subsequently, on the following day, Mr. Dietsch contacted Mr. Smart and pointed out Mr. Porterfield's alleged account of how easily a Burger King restaurant could be robbed.

In light of the above-mentioned circumstances, Burger King Corporation has reason to believe that such alleged conversation had taken place. This, coupled with Mr. Porterfield's negligent handling of the gift certificates, which had a redeemable value of One Thousand Dollars ($1,000), led Mr. Smart to inform Mr. Porterfield of his termination, effective January 2, 1975.

After his services with Burger King were terminated, Porterfield contacted several companies seeking other employment. No prospective employer asked to see a service letter. Porterfield was offered employment with one company but he refused the offer. Approximately one month after his termination by Burger King, on February 13, 1975, he obtained his own franchise.

In the district court Porterfield contended that the service letter did not state the true reason for his discharge as required by the statute.

In this appeal Porterfield contends that the trial court erred in concluding that as a matter of law Porterfield failed to make a submissible case on the issue of substantial actual damages concerning the service letter and failed to make a submissible case on the issue of whether the report was libelous. We disagree with both of the appellant's contentions.

The jury verdict concerning the service letter count indicates that the jury found a violation of the statute. It has been held in Missouri that a violation of the service letter statute entitles the plaintiff to recover nominal damages. *Johnson v. American Mutual Liability Insurance Co.,* 335 F.Supp. 390, 393 (W.D.Mo.1971); *Howe v. St. Louis Union Trust Co.,* 392 S.W.2d 625, 629–30 (Mo.1965); *Cook v. Mid-Continent Petroleum Corp.,* 193 S.W.2d 66, 68–69 (Mo.App.1946). Missouri cases make it equally clear that in order to recover substantial actual damages, the plaintiff must

introduce some evidence of refused employment because of the lack of, or deficiencies in, the service letter. *Johnson, supra,* 335 F.Supp. at 393–94; *Schmidt v. Central Hardware Co.,* 516 S.W.2d 556 (Mo.App. 1974); *Booth v. Quality Dairy Co.,* 393 S.W.2d 845, 848 (Mo.App.1965); *Bubke v. Allied Building Credits, Inc.,* 380 S.W.2d 516, 521–22 (Mo.App.1964); *Heuer v. John R. Thompson Co.,* 251 S.W.2d 980, 985 (Mo. App.1952); *Cook, supra,* 193 S.W.2d at 68–69; *Soule v. St. Joseph Ry., Light, Heat & Power Co.,* 220 Mo.App. 497, 274 S.W. 517, 519 (1925). The record discloses no evidence of refused employment because of the deficiencies found in the service letter by the jury. Porterfield did seek other employment upon his termination with Burger King but no prospective employer asked to see a service letter. He was offered employment with another company and by February 13, 1975, he had obtained his own franchise.

Appellant contends that substantial actual damages are recoverable without evidence of refused employment. The two cases that are cited for this proposition are *Roberts v. Emerson Electric Manufacturing Co.,* 338 S.W.2d 62, 71 (Mo.1960), and *Ackerman v. Thompson,* 356 Mo. 558, 202 S.W.2d 795, 799 (1947). In *Ackerman,* the Missouri Supreme Court analyzed a jury instruction concerning damages in a service letter case. The court concluded that it was proper to instruct a jury that if the refusal to give a service letter was a result of actual malice, then mental suffering endured by a plaintiff could be considered in awarding him compensatory damages. Evidence was presented in the case, however, that plaintiff was refused employment because he could not furnish his prospective employer a service letter.

In *Roberts,* the Missouri Supreme Court stated in effect that an instruction permitting the jury to award damages for mental anguish, humiliation and outrage where actual malice is present was not erroneous. The facts of the case again reveal, however, that evidence was introduced to show that plaintiff was refused employment because of the deficient service letter.

We find that *Ackerman* and *Roberts* do not set out a different theory for recovering substantial actual damages in a service letter case. Some evidence of refused employment because of the lack of, or deficiencies in, the service letter must be introduced before a plaintiff can recover substantial actual damages. Since the record discloses no such evidence, the district court was correct in ruling that no submissible case had been made on the question of substantial actual damages.[4]

Porterfield also contends that the trial court erred in concluding that Porterfield failed to make a submissible case on the libel count. The district court, in granting the defendant's motion for judgment in accordance with the motion for directed verdict, found that the crime loss theft report was not libelous per se. It also found the report to be a qualified privileged communication and since the plaintiff submitted no evidence from which actual malice could be inferred, the defendant's communication was not libelous. We agree with the trial court's conclusion.

In Missouri, libel in the form of falsely accusing another of an indictable crime is actionable per se. *Riss v. Anderson,* 304 F.2d 188, 194 (8th Cir. 1962); *Robinson v. Johnson,* 239 F. 671, 674 (8th Cir. 1917); *Childers v. Nesselroad,* 357 Mo. 1218, 212 S.W.2d 727, 729 (1948); *Cook v. Pulitzer*

---

4. Since no submissible case had been made, the district court ordered that appellant be awarded only $1 nominal damages. Appellant characterizes this action as a remittitur and states that the plaintiff must consent before a trial court can remit a judgment. We disagree, however, with appellant's characterization of the district court's action as a remittitur. The concept of remittitur is applicable (and thereby requires the plaintiff's consent) when the

amount of damages is found to be excessive. *Northern Pacific R. R. v. Herbert,* 116 U.S. 642, 646–47, 6 S.Ct. 590, 29 L.Ed. 755 (1885). Here the district court did not find that the amount of substantial actual damages was excessive but rather there was no evidence introduced to support their existence. Since a submissible case had been made that the statute was violated, thereby entitling the plaintiff to $1 nominal damages, the district court's order was proper.

*Pub. Co.,* 241 Mo. 326, 145 S.W. 480, 484–85 (1911). If the defamation is actionable per se, then punitive damages can be awarded without any proof of actual damages because the law presumes actual damages. *Priest v. Central States Fire Ins. Co.,* 223 Mo.App. 122, 9 S.W.2d 543, 544 (1928).

■ The crime loss theft report (a business insurance report) listed Porterfield's name along with nine others as "Names of Personnel Involved." All the people who presently or previously had a key to the burglarized restaurant were listed. Also the report stated "Front Door Entry & Exit. Safe Opened By Person Unknown." In light of these facts, we agree with the district court's ruling that the report was not libelous per se.

■ The jury awarded punitive damages on this count but specifically awarded no actual damages. In Missouri, punitive damages can only be recovered where there is a basis for a recovery of compensatory damages. *Holliday v. Great Atlantic & Pacific Tea Co.,* 256 F.2d 297, 300 (8th Cir. 1958); *Koenig v. Skaggs,* 400 S.W.2d 63, 68 (Mo. 1966). Since this report was not libelous per se and the jury found no actual damages, the award of punitive damages cannot stand.

■ The district court further found that the report was qualifiedly privileged. This court discussed the concept of qualified privileged communications in *Holliday, supra,* 256 F.2d at 302–03. There it was stated:

> Quite aside from the sufficiency of the complaint to charge actionable slander, a communication made by one under circumstances indicating good faith in the discharge of his duties is qualifiedly privileged.

*Id.* at 302. It is clear from the record that the crime loss theft report is a business insurance report which Burger King's parent company, The Pillsbury Company, requires to be completed and mailed to its corporate insurance department upon discovery of a theft. This report was prepared on the day of the discovery of the theft by the manager of the restaurant along with the aid of the assistant district manager. The form was mailed to The Pillsbury Company where it was read by two employees of that company and retained in its files. Under these circumstances we hold that the report was qualifiedly privileged.

Since the report is qualifiedly privileged, it is actionable only upon proof of actual malice. *Kroger Grocery & Baking Co. v. Yount,* 66 F.2d 700, 702–04 (8th Cir. 1933); *Estes v. Lawton-Byrne-Burner Insurance Agency Co.,* 437 S.W.2d 685, 691 (Mo.App. 1969). The district court concluded that the plaintiff submitted no evidence from which malice could be inferred. We agree. The report was prepared on the day that the robbery was discovered. It is important to remember that the situation must be viewed as it appeared at the time to the person making the statements complained of, and not in light of later developments. *Kroger Grocery & Baking Co., supra,* 66 F.2d at 703. All people who had a key or who had had a key were listed under "Names of Personnel Involved." This was done in light of the fact that there was no sign of forced entry into the store. Although Porterfield's name was first on the list, the record shows that nine other people were listed including the restaurant manager who prepared the report.

Evidence was introduced by Porterfield that he was in line for promotion to the position of district manager. The assistant district manager (who aided in the preparation of the report) was eventually promoted to that position. Appellant argues that this evidence was sufficient to make a submissible case on the issue of malice. We disagree. On this record we find no evidence from which malice could be inferred.

We conclude that the report was not libelous per se and the jury's award of punitive damages without a finding of actual damages cannot stand. Furthermore, the report was qualifiedly privileged and there was no evidence introduced from which malice could be inferred. It follows that the district court properly granted the defendant's motion for judgment in accord-

ance with the defendant's motion for directed verdict.

Affirmed.