Linda JASPERSON,
Appellant/Cross-Appellee,

v.

PUROLATOR COURIER CORP.,
Appellee/Cross-Appellant.

Nos. 84–1810, 84–1844.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 15, 1985.

Decided June 24, 1985.

Rehearing Denied Aug. 2, 1985.

Stuart R. Berkowitz, Clayton, Mo., for appellant/cross-appellee.

D.J. Sullivan, St. Louis, Mo., for appellee/cross-appellant.

Before LAY, Chief Judge, and JOHN R. GIBSON and FAGG, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Linda Jasperson was awarded $4,000.00 in actual damages in a service letter[1] suit she brought against Purolator Courier Corporation on the grounds that the letter did not state the true reason for her discharge. She now appeals the district court's[2] refusal to submit the issue of punitive damages to the jury. Purolator cross-appeals, arguing that Jasperson was entitled at most to nominal damages of one dollar. The case largely turns on whether Missouri's amended service letter statute (which was enacted after the facts giving rise to Jasperson's claim but before she had filed her lawsuit) applies. We conclude that Jasperson had a submissible case on the question of whether the true reasons for her discharge were given in the service letter but that the amended statute does apply, entitling her, as we explain below, only to nominal damages. We accordingly affirm the judgment

in favor of Jasperson but remand with instructions that the district court reduce the award of damages to $1.00.

Linda Jasperson was a courier guard for Purolator. She was fired on October 2, 1981, after Purolator investigated its St. Louis terminal and found reason to believe that a relationship between Jasperson and her immediate supervisor, Russell Schilligo, was affording her favored treatment and generally causing a morale problem. Schilligo was discharged at the same time.

On October 7, Jasperson wrote Purolator asking for a letter stating the length of time she had been employed, a description of her job duties, and the reason for her termination.[3] Purolator claims it sent a reply later in October; Jasperson testified she never received a response. In December Jasperson sent Purolator by registered mail a photostatic copy of her October 7 letter; Purolator made no response. Finally, on April 21, 1982 Jasperson's counsel wrote Purolator, commenting that Purolator's correspondence of October 2, 1981 failed "to contain a statement of the true reason why [Jasperson] was terminated" and requesting that Purolator "remedy this deficiency by forwarding to [him] a service letter" that fully complied with the Missouri service letter statute. On June 16, 1982, Purolator wrote to Jasperson's counsel:

> [W]e believed that she [Jasperson] had established a relationship with a company supervisor who exercised supervision over her and other employees, and we believed that this created an appearance of favoritism toward her on the part of that supervisor in regard to her route schedules. We believed that there was a perception among our St. Louis personnel that such favoritism on the job existed, and we believed that this perception

---

1. Mo.Rev.Stat. § 290.140 (Supp.1984), the service letter statute, essentially provides that an employer must give a letter to a discharged employee stating, inter alia, why the employee was discharged. *See infra* note 4.

2. The Honorable James H. Meredith, Senior United States District Judge for the Eastern District of Missouri.

3. Though she did not ask for a service letter by name or refer to the service letter statute, the information she requested is that required under the statute. *See infra* note 4.

was creating a serious morale problem among other employees. We concluded that for this reason Linda's employment should be terminated.

Jasperson then filed suit under Missouri's service letter statute, alleging, alternatively, that Purolator had not issued a service letter, that it had not issued a service letter within a reasonable time, and that it had issued a false letter. She sought actual and punitive damages under each theory.

Between the time of Jasperson's first request for a service letter and the filing of her lawsuit, the service letter statute was amended to permit punitive damages only when an employer fails to issue a requested letter.[4] Before the trial began, the district court ruled that the case fell under the amended statute, that as a matter of law the June 16th letter was a service letter, and, thus, that the issue of punitive damages would not be raised in the lawsuit since there had been no absolute failure to issue a service letter. Jasperson's counsel made an offer of proof regarding punitive damages and later at the instructions conference after the close of evidence objected to the failure to instruct on the issue of punitive damages, the refusal of an instruction based on the delayed issuing or failure to issue a service letter, and the district court's decision to instruct only on the issue of whether the letter stated the true cause of termination. The case was submitted on this latter ground to the jury, which returned a verdict of $4000.00 actual damages.

Judgment was entered on the verdict and this appeal and cross-appeal followed. Jasperson argues that the case should be reversed and remanded for trial on the punitive damages issue. Purolator disagrees and, in addition, argues Jasperson did not establish a submissible case on either the issue of liability or actual damages.

### I.

Jasperson's right to punitive damages depends on which statute is applicable to her claim: that in effect at the time of her discharge and request for a service letter, or that in effect when she filed her lawsuit. Punitive damages were generally recoverable under the older statute. The amended statute, however, provides that punitive damages may be recovered only when the employer did not issue a service letter and specifically states that no award of punitive damages "shall be based" upon the content of a letter. As Jasperson's case was submitted only on the issue of the truthfulness of the letter, if the new statute applies, there would exist no base to support any claim by Jasperson for punitive damages.

In Missouri, "when the legislature repeals an existing statute, it is considered to have done so in contemplation of the general savings statutes §§ 1.170 and 1.180, RSMo 1978." *State ex rel. Deering v. Corcoran,* 652 S.W.2d 228, 229 (Mo.Ct. App.1983) (footnote omitted). Mo.Rev.Stat. § 1.170 provides that repeal of a statute

---

**4.** The amended statute, which became effective August 13, 1982, provides:

1. Whenever any employee of any corporation doing business in this state and which employs seven or more employees, who shall have been in the service of said corporation for a period of at least ninety days, shall be discharged or voluntarily quit the service of such corporation and who thereafter within a reasonable period of time, but not later than one year following the date the employee was discharged or voluntarily quit, requests in writing by certified mail to the superintendent, manager or registered agent of said corporation with specific reference to the statute, it shall be the duty of the superintendent or manager of said corporation to issue to such employee, within forty-five days after the re-

ceipt of such request, a letter, duly signed by such superintendent or manager, setting forth the nature and character of service rendered by such employee to such corporation and the duration thereof, and truly stating for what cause, if any, such employee was discharged or voluntarily quit such service.

2. Any corporation which violates the provisions of subsection 1 of this section shall be liable for compensatory but not punitive damages but in the event that the evidence establishes that the employer did not issue the requested letter, said employer may be liable for nominal and punitive damages; but no award of punitive damages under this section shall be based upon the content of any such letter.

Mo.Rev.Stat. § 290.140 (Supp.1984).

does not affect a "right accrued or established in any proceeding, suit or prosecution." The specific question we face, therefore, is whether Jasperson's right to claim punitive damages accrued before she filed suit.

Although a handful of Missouri cases have dealt with the retroactive effect to be given the amended service letter statute, none is directly on point. While in *Deering* the court held that punitive damages could be claimed when suit had been filed before the amended statute became effective, 652 S.W.2d at 230, that court also took particular pains to note that "[i]t is unnecessary and we do not decide relator's general entitlement to punitive damages or the amendment's effect on the position of former employees and former employers where the amendment became effective before an action was commenced." *Id.; see also Crompton v. Curtis-Toledo, Inc.,* 661 S.W.2d 645, 651 (Mo.Ct.App.1983) (interest in punitive damages vested where judgment preceded amended statute); *Musselman v. Anheuser-Busch, Inc.,* 657 S.W.2d 282, 285 (Mo.Ct.App.1983) (same); *Arie v. Intertherm, Inc.,* 648 S.W.2d 142, 149 (Mo. Ct.App.1983) (same). *See generally Easley v. Empire, Inc.,* 757 F.2d 923, 927 (8th Cir.1985).

■ Thus, the district court's task in this situation was to interpret the statute the way it "believed the state courts would in all probability follow." *Bergstreser v. Mitchell,* 577 F.2d 22, 25 (8th Cir.1978). While its ruling here was made in the heat of trial and thus may not be due the deference to be accorded a more studied decision, *see Kansas State Bank v. Citizens Bank,* 737 F.2d 1490, 1496 (8th Cir.1984), nonetheless we shall not abandon our general rule that great weight is to be given such determinations of state law by experienced district judges. *Keltner v. Ford Motor Co.,* 748 F.2d 1265, 1267 (8th Cir.1984). The district court here reached the same conclusion as did the district court in *Rahn v. Consolidated Freightways, Inc.,* No. 83-

0230C(3) (E.D.Mo. Sept. 12, 1983): Where service letter claims are filed after the effective date of the amended statute, a right to claim punitive damages has not accrued.

■ While the general rule in Missouri is that a statute is not to be applied retrospectively, an exception has long been recognized where the statute deals only with procedure or remedies. *State ex rel. St. Louis-San Francisco Railway Co. v. Buder,* 515 S.W.2d 409, 410 (Mo.1974) (en banc); *Scheidegger v. Greene,* 451 S.W.2d 135, 137 (Mo.1970); *Wentz v. Price Candy Co.,* 352 Mo. 1, 175 S.W.2d 852, 853 (1943); *Supreme Auto Sales v. Bedford,* 672 S.W.2d 712, 713 (Mo.Ct.App.1984). Indeed, the exception *requires* that such a statute be applied retrospectively, unless the legislature has otherwise expressly stated. *Adams Dairy Co. v. National Dairy Products Corp.,* 293 F.Supp. 1135, 1161 (W.D. Mo.1968). Since punitive damages are clearly a matter of remedy, a statute restricting their availability is to be applied retrospectively unless such application "will impair a substantive right vested by the prior statute," *State ex rel. Research Medical Center v. Peters,* 631 S.W.2d 938, 946 (Mo.Ct.App.1982); and thus override the rule of the exception.

■ The *Arie* court in dicta analyzed this latter issue, finding that in the case law of other jurisdictions

> prior to entry of judgment no plaintiff has a vested right to punitive damages and a statute precluding an award of punitive damages may constitutionally be applied retroactively; however, once the plaintiff has had a judgment awarding him punitive damages he has a "vested right" in said punitive damages and cannot be deprived of the punitive damages by retroactive application of a statute precluding an award of punitive damages which was enacted and took effect after the entry of judgment.

648 S.W.2d at 159. Under this analysis,[5] and since it is also firmly established in

---

**5.** The decision in *Deering* is somewhat at odds with this analysis, since there the filing of the

case preserved the right to claim punitive damages. The *Deering* court justified this holding

Missouri that punitive damages are never allowable as a matter of right, *DeBow v. Higgins,* 425 S.W.2d 135, 143 (Mo.1968), and are "mere incidents to the cause of action," *Holcroft v. Missouri-Kansas-Texas Railway Co.,* 607 S.W.2d 158, 163 (Mo. Ct.App.1980), it follows that no right to claim punitive damages vested in Jasperson before she filed suit. Thus, we cannot conclude that the district court erred in applying the amended statute retrospectively to Jasperson's claim.

## II.

Under the amended statute, Jasperson could claim punitive damages only for Purolator's failure to issue a service letter. Such failure might result, for example, from the issuance of a letter that purported to be a service letter but was not, or from issuance of a letter after the forty-five day period specified in the statute.[6] As we noted above, Jasperson's counsel objected to the rulings of the district court made before commencement of the trial and at the instructions conference that prevented these grounds for recovery from being submitted to the jury.

On appeal, however, Jasperson does not ask for a new trial for determination of actual or nominal damages rising out of a statutory violation for failure to issue a service letter. She specifically states in her brief that "plaintiff does not seek a new trial on the issue of actual damages"

and is content to defend her verdict based on the falsity of the service letter issued. She concludes her brief by stating that "because liability was established by virtue of the jury's verdict on actual damages, this case should be reversed and remanded for a determination of appropriate punitive damages." Thus, she has failed to request a new trial for actual or nominal damages stemming from a violation of the statute by Purolator for failure to issue the letter—the only theory that could possibly support punitive damages under the amended statute. She seeks a new trial for punitive damages on a substantive base that will not support them and has simply failed to ask for a new trial on the substantive ground that would provide a proper foundation.

Fed.R.App.P. 28(a) provides that an appellant's brief "shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor." A party's failure to raise or discuss an issue in his brief is to be deemed an abandonment of that issue. *Preemption Devices, Inc. v. Minnesota Mining & Manufacturing Co.,* 732 F.2d 903, 906 (Fed.Cir. 1984); *Carducci v. Regan,* 714 F.2d 171, 177 (D.C.Cir.1983); *Fehlhaber v. Fehlhaber,* 681 F.2d 1015, 1030 (5th Cir.1982), *cert. denied,* —— U.S. ——, 104 S.Ct. 79, 78 L.Ed.2d 90 (1983). As "[p]roper judicial administration requires that error relied

---

by pointing out that to make such right dependent on whether "a congested court docket prevented * * * [a] case from proceeding to trial," a "situation beyond * * * [a plaintiff's] control," would be contrary to the spirit of the savings statutes and not in accord with public policy. 652 S.W.2d at 230. While the point is well taken, it has no bearing on the *Arie* analysis as it applies to Jasperson's case, since Jasperson's decision to file suit when she did was fully within her control.

**6.** The statute leaves unanswered exactly what is required to show "that the employer did not issue the requested letter." Arguably, this means an absolute failure where the employer either failed to issue a letter to the day of trial or else issued a letter that purported to be a service letter but, in fact, was not. Under a more permissive reading of the statute, since paragraph one requires that the letter be issued

"within forty-five days after the receipt of * * * [the employee's] request," any issuance after that time would be deemed a failure to issue. Still a third interpretation follows from the case law built up around the original statute, where an unreasonable delay in issuing the letter amounted to a failure to issue. *See Heuer v. John R. Thompson Co.,* 251 S.W.2d 980, 987 (Mo.Ct.App.1952). Thus, if an employer issued a letter after the forty-five day period but before trial, at some point his delay might become so unreasonable as to constitute failure to issue—a question to "be measured by the facts of each case." *Hanch v. K.F.C. National Management Corp.,* 615 S.W.2d 28, 34 (Mo.1981) (en banc). In arguing that she was entitled to punitive damages because the letter was untimely, Jasperson does not differentiate between the latter two interpretations.

upon should be asserted in appellant's opening brief," *Mississippi River Corp. v. FTC,* 454 F.2d 1083, 1093 (8th Cir.1972), "[q]uestions not raised, briefed or argued will ordinarily be given no consideration by an appellate court." *Smith v. American Guild of Variety Artists,* 368 F.2d 511, 514 (8th Cir.1966), *cert. denied,* 387 U.S. 931, 87 S.Ct. 2052, 18 L.Ed.2d 991 (1967).

■ Here, Jasperson's failure to request a new trial for actual or nominal damages based on a statutory violation by Purolator for failure to issue a service letter was an abandonment of that issue. We shall not consider it further and, hence, find no ground upon which this case could be remanded for determination of punitive damages. Our conclusion may appear to be extremely technical. Missouri's service letter statute, however, creates a technical right of private recovery not found in any other state, and the 1982 amendments create further complications. Ordinarily, in actions where punitive damages may be awarded, a showing of legal malice is sufficient to support such damages once there is a base of liability that supports actual or nominal damages. Thus, ordinarily the substantive base remains the same for the varying types of damages. The amended service letter statute, however, creates two separate categories of grounds that will support nominal or actual damages. Only one—a failure, in some fashion, to issue a service letter—can support punitive damages. A claim based on the contents will not do so. Thus, the right to submit punitive damages is directly dependent upon the substantive basis of the claim made. It is for this reason that Jasperson's failure to request a new trial to establish the failure to issue the letter takes on such significance. She has not only failed to ask for reconsideration of this issue, but has specifically disavowed any desire to do so.

She cannot claim punitive damages for a letter with false contents, but her verdict is based only on this ground. As she is content with her verdict and has not asked for a new trial on the failure to issue a letter, she cannot claim punitive damages on the verdict she has.

### III.

■ On cross-appeal, Purolator argues first that the district court erred in denying its motions for a directed verdict and for judgment notwithstanding the verdict since there was no evidence to support the jury's finding that the service letters were untrue. These motions could have been sustained only if all the evidence had pointed one way and was susceptible of no reasonable inferences sustaining the position of the nonmoving party. *Brown v. Syntex Laboratories,* 755 F.2d 668, 671 (8th Cir. 1985) (citing *SCNO Barge Lines, Inc. v. Anderson Clayton & Co.,* 745 F.2d 1188, 1192 (8th Cir.1984)). The issue, of course, was not whether Jasperson had a relationship with Schilligo (which she herself testified to) but, rather, whether Purolator told the truth when it said in the service letter that it fired Jasperson because it believed that her relationship created an appearance of favoritism, in turn causing a morale problem. Thus, whether there *was* an appearance of favoritism causing a morale problem at the St. Louis terminal was a valid, factual issue in the trial bearing, as it did, on the question of the truthfulness of Purolator's belief expressed in the letter. Since Jasperson herself testified that there was no such appearance and since other witnesses for her said the same thing, we cannot conclude that the district court erred in denying Purolator's motions.

■ Far more serious is Purolator's argument that Jasperson did not prove actual damages.[7] We believe the case law

---

7. Purolator at the instructions conference offered a damages instruction stating that if the jury found in favor of Jasperson it then "must award plaintiff the amount of One Dollar ($1.00) as and for nominal damages." The instruction was refused. Purolator also specifically objected to the use of Missouri Approved Jury Instructions 4.01 (1981), a general damages instruction, because "under the facts in this case * * * this plaintiff has acknowledged and has stated that she never submitted the service letter in this case to any prospective employer. So, it couldn't have interfered with her job search or her opportunity to secure other employment."

under the former statute still governs this issue. The necessary elements for proof of such damages are stated in *Labrier v. Anheuser Ford, Inc.*:

> (1) that on or about an approximate date the plaintiff was either refused employment or hindered in obtaining such employment; (2) *that the refusal or hinderance was caused by the absence or inadequacy of the service letter;* (3) that the position the plaintiff had difficulty obtaining was actually open; and (4) the salary rate of that position.

621 S.W.2d 51, 57 (Mo.1981) (en banc) (emphasis added) (quoting *Herberholt v. dePaul Community Health Center*, 625 S.W.2d 617, 622–23 (Mo.1981) (en banc) (citing *Rotermund v. Basic Materials Co.*, 558 S.W.2d 688, 691–92 (Mo.Ct.App. 1977))); *see also Porterfield v. Burger King Corp.*, 540 F.2d 398, 401–02 (8th Cir.1976) (to recover actual damages, plaintiff must introduce some evidence of refused employment because of lack of, or deficiencies in, service letter). Thus, for example, to recover actual damages a plaintiff must show that a "prospective employer asked to see a service letter," *Porterfield*, 540 F.2d at 402, or that a "potential employer held the service letter against him [the plaintiff]." *Labrier*, 621 S.W.2d at 57.[8] Here, Jasperson could only testify that she was not able to show prospective

employers a letter from Purolator[9] and thus felt that her job search was hindered. Such a subjective feeling does not meet the *Labrier* test. Jasperson did not establish a submissible case on the issue of actual damages. The judgment entered on the verdict for $4,000.00 actual damages must be reduced to $1.00 nominal damages.

We affirm the judgment entered for Jasperson but remand with instructions that the district court reduce the award of actual damages from $4,000.00 to $1.00.

This objection sufficiently preserved the issue for appeal.

8. One commentator, after stating that "the sticking-point lies with the causality requirement of the second element" of the *Labrier* test, goes on to note that

> [t]here are, however, certain ways in which the requirement may be modified or relaxed. First, proof that plaintiff was injured in obtaining other employment may be of a circumstantial nature. Second, a mere hindrance or delay in obtaining employment will suffice; absolute refusal to hire is not required. Third, though case law on the point is sparse, there is apparently no requirement that the prospective employer be aware of the existence of statutory service letters or that he specifically ask for such. Though a mere request for a letter of recommendation will not trigger liability, a request that the prospective employee furnish proof of the information specified in the statute apparently will.

Comment, *Missouri's Service Letter Statute: Its Reach, Effect, and Constitutionality*, 52 UMKC L.Rev. 641, 652–53 (1984) (footnotes omitted). Here, even if these relaxed conditions are applied, Jasperson's evidence simply is not sufficient to meet the causality requirement.

9. Of course, Purolator claims two service letters were sent. Jasperson states in her brief that "she was unable to use defendant's first letter because she never received it. She didn't use defendant's second letter because she didn't consider it a valid service letter. It was written to her attorney, and did not truly state the reason for her discharge." Even if we assume everything Jasperson says is true, our inquiry still must focus not on what *Jasperson* thought about the letter, but, rather, on what her prospective *employers* thought. Unless the lack of a letter caused *them* to refuse her employment, Jasperson has made no case for actual damages.