JETCO HEATING & AIR
CONDITIONING, INC.,
Plaintiff,

v.

Martin D. SPIZMAN and Lois W.
Spizman, Defendants.

No. 51731.

Missouri Court of Appeals,
Eastern District,
Division Five.

June 16, 1987.

Motion for Rehearing and/or Transfer
Denied July 21, 1987.

Application to Transfer Denied
Sept. 15, 1987.

Roger M. Hibbits, Florissant, for plaintiff.

Charles A. Siegel, III, Gallop, Johnson & Neuman, St. Louis, for defendants.

SNYDER, Chief Judge.

This is a suit tried to a jury on a claim of Jetco Heating and Air Conditioning, Inc., for the balance due on a contract for repair of storm damage to a roof; and on the counterclaim of defendants Martin D. Spizman and Lois W. Spizman alleging a failure of Jetco to perform its roof repairs in a workmanlike manner. The verdict and judgment were in favor of Jetco on both its claim and the Spizman's counterclaim. The judgment of the trial court is affirmed.

Both parties have appealed. Jetco alleges as trial court error that there was an improper remittitur. The trial court reduced the judgment on the Jetco claim from $11,000 to $6,000 plus interest of $2560 to the date of the judgment. This was done on the ground that the jury verdict was not in accordance with the pleadings.

The Spizman's cross appealed, raising two points. The first charged trial court error in denying a motion for a mistrial

because evidence of insurance coverage was brought before the jury. In their second point, the Spizman's assert it was error for the trial court to overrule their objection to the insurance testimony.

Martin and Lois Spizman own a residence in St. Louis County. In the spring of 1981 the copper roof of the Spizmans' residence was damaged in a wind storm. The Spizmans' insurance carrier recommended several companies to bid on the repair of the damaged roof, including Jetco.

On April 16, 1981, Jetco submitted a bid to repair the Spizmans' roof for $15,272.00. This proposal was accepted by the Spizmans and work began on April 27 of the same year. On June 24, 1981, the parties modified their agreement to provide for the use of salvageable pieces of the old copper roofing materials and the agreed price was adjusted downward to $13,500.00.

Karl Sonderman, the owner of Jetco, testified that the job was completed by June 25, 1981. Respondent Martin Spizman, however, testified that Jetco did not inform him that the work had been completed until the middle of August, 1981. Spizman testified further that he never received a written bill for the work and could not explain why a letter on his stationary, signed by him and dated August 8, 1981, acknowledged the receipt by him of Jetco's invoice.

After the work was completed the Spizmans made a partial payment in the amount of $5,000 by a check dated August 21, 1981, leaving a balance of $8,500 owing to Jetco even though there were no complaints with the repair work at that time. Mr. Spizman explained to Mr. Grider, a Jetco employee, that he wanted to wait for rain to see if there were any leaks in the roof before he paid the balance due. It was agreed that the $5,000 partial payment would be accepted at that time on the condition that the entire bill would be paid within thirty days. Full payment was never received.

During the period between mid-August and mid-November the Spizmans experienced water leakage problems which they attributed to inadequate roof repairs. During this period a Jetco employee returned to the Spizmans residence on at least four separate occasions in an attempt to remedy any problems with the roof. The Jetco employee's inspections included tours of the interior of the house, the attic, and removal of flashing surrounding the chimney. Jetco's employee determined from his inspections that there were no roof leaks and that water was entering the house beneath the guttering due to a clogged downspout. The guttering had not been part of Jetco's work.

In January of 1982, upon Jetco's demand for more money, the Spizmans made an additional payment of $2,500, and told Jetco they would pay the balance if there were no leaks after the first spring rain. In early April there were heavy rains and more water leaked into the Spizmans' house. Jetco refused to take any further action after making an inspection, determining the problem to be related to the guttering, not the roof. The Spizmans refused to pay the remaining $6,000.00.

In August of 1982 Jetco filed suit against the Spizmans, seeking a mechanics lien and judgment against the Spizmans for the $6,000 balance, plus prejudgment interest at the rate of 9%. The Spizmans counterclaimed for $25,000 in damages allegedly caused by Jetco's unworkmanlike roof repairs.

The trial court, on the grounds that such evidence might disclose a real party in interest problem denied the Spizmans' motion in limine in which they requested that Jetco be prohibited from admitting evidence on insurance coverage.

Upon direct examination by Jetco's counsel during Jetco's case-in-chief, Mr. Spizman testified, in response to a question asking why he had contacted Jetco, that his insurance company had recommended Jetco. During the Spizmans' case-in-chief, in response to a similar question by his own counsel, Mr. Spizman again testified that his insurance company had recommended Jetco.

During cross-examination of Mr. Spizman in the Spizman's case-in-chief, the court sustained the Spizmans' objection to

an inquiry by Jetco about whether Spizman received any money from his insurance company for the roof damage.

The court made its ruling after an examination of Mr. Spizman out of the hearing of the jury satisfied the court that the Spizmans were in fact the real parties in interest. Counsel for the Spizmans then withdrew the request for a mistrial which he had made shortly after his objection.

Upon continued cross examination counsel for Jetco again inquired of Mr. Spizman as to whether he had received money from any insurance company in regard to this matter. The Spizmans immediately renewed their motion for a mistrial. The court overruled this motion on the ground that there was already evidence in the record that Mr. Spizman had made a claim against his insurance company and had been referred to Jetco. Mr. Spizman was then permitted to answer the question over his counsel's objection that the mention of the Spizmans' receipt of insurance proceeds in the presence of the jury would be highly prejudicial. The court allowed this testimony on the grounds that the Spizmans had opened the insurance issue in previous testimony. Mr. Spizman then testified that he received $13,500 in insurance proceeds for the storm loss.

The jury awarded Jetco $11,000 on its claim against the Spizmans and denied the Spizmans relief on their counterclaim.

The trial court entered judgment in accordance with the $11,000 verdict, but in ruling on the Spizmans' motion for new trial, reduced the judgment to $6,000 plus interest of $2,560 to the date of judgment. The court held the original judgment to be in excess of the pleadings. Appeals were then taken by both parties.

Jetco's sole point on appeal complains of the court's reduction in the amount of the jury's verdict. The point is denied.

In their motion for new trial, the Spizmans contended, among other things, that the $11,000 verdict was against the weight of the evidence. The trial court, in response to that part of their motion for a new trial, ruled that the judgment was in excess of the pleadings, and reduced the

judgment to the $6,000 plus pre-judgment interest in the amount of $2560.

Jetco, in its point relied on asserts that it was an improper remittitur for the trial court to reduce the amount of the jury verdict, although in the argument portion of the brief Jetco fails to mention remittitur, nor does it cite any authority on this point. Jetco's argument is directed only to the supreme court rule which allows amendments to the pleadings so that they may be made to conform with the proof of issues that are tried with the express or implied consent of the parties. Rule 55.-33(b). The rule also directs that failure to amend the pleadings does not affect the result of the trial of those issues.

Jetco's theory is that there was proof adduced at trial of damages for breach of the contract in excess of the $6,000 prayed for. Jetco argues that the issues tried with the consent of the parties included alleged damages suffered by Jetco based on the return trips by Jetco personnel to check the Spizmans' claims of leaks, and on the theory that Jetco is entitled to damages for the loss of use of its money.

The trial court characterized the verdict, which was in excess of the prayer of plaintiff's petition, as being against the weight of the evidence. In fact there was no evidence to support it.

The jury could have found and did find that there was a breach of the contract. The contract was for a definite amount. The evidence proved that liquidated amount and little else.

Jetco argues that the issue of additional damages was tried by consent of the parties and therefore the pleadings should be treated as having been amended to conform to the proof, citing *Arzberger v. Grant*, 500 S.W.2d 23 (Mo.App.1973). But there was no evidence that Jetco performed additional contract services or suffered a loss of profits.

Jetco contended that it performed additional services when employees of Jetco visited the Spizmans' residence to investigate the Spizmans' claims of faulty workmanship. The time spent on these visits

was not spent on the performance of the contract, but even assuming that through some esoteric reasoning, the visits could be related to the contract performance, there was not a scintilla of evidence of the reasonable value of those services.

Jetco advances the theory that, because the Spizmans had the use of the money which the jury found that they owed on the contract, and Jetco did not have the use of the money during the pre-judgment period, Jetco should be able to recover more than the contract price. Jetco has cited no case in which such recovery has been permitted.

■ Jetco cites *Artcraft Cabinet, Inc. v. Watajo, Inc,* 540 S.W.2d 918 (Mo.App.1976) for the proposition that the Spizmans should be required to turn over to Jetco the interest income derived from the dollars withheld from Jetco during the period prior to judgment to the extent that such income was attributable to market interest rates which were above the statutory rate for pre-judgment interest. *Artcraft* does not support Jetco's position. In *Artcraft* there was substantial proof of damages based on performance of the contract. There was nothing in that case relating to interest rate differentials as implied by Jetco in its brief. Moreover, the trial court, apparently taking into consideration the period of time for which the money was held by the Spizmans allowed pre-judgment interest on the liquidated amount due on the contract. It was not error for the trial court to find there was no evidence to support the jury's verdict in excess of the $6,000 prayed for in the petition.

At the time the judgment was rendered, trial courts did not have the power to grant remittitur. *Firestone v. Crown Center Redevelopment Corp.,* 693 S.W.2d 99, 110 [14] (Mo. banc 1985). The question then is whether the reduction in the amount of the judgment by the trial court was indeed a remittitur or was an order which the court had the authority to make because of the state of the record.

The damages here are liquidated. It would serve no purpose, and would only promote judicial inefficiency, to remand the case to the trial court. Rule 84.14 admonishes an appellate court to dispose finally of a case unless justice otherwise requires. Justice requires, not further litigation, but an end to litigation. The trial court merely eliminated that portion of the verdict which was not asked for in the petition and was not proved in the trial court.

■ This court finds that the trial court's reduction of the jury verdict did not constitute a remittitur, but was a reduction of the verdict because there was no evidence to support an award which exceeded the $6,000 asked for in the petition. This reasoning is supported in a case decided on similar facts by the federal appellate court in *Porterfield v. Burger King Corporation,* 540 F.2d 398 (8th Cir.1976).

*Porterfield* was a service letter case in which the trial judge reduced the award of damages from $10,000 to $1 nominal damages on the ground that there was no evidence to support the existence of actual damages.

The federal appellate court, in a footnote, said the concept of remittitur was not applicable in that case because the federal district court did not find that the amount of actual damages was excessive, but rather that there was no evidence to support the existence of actual damages. 540 F.2d at 402, n. 4. The federal court was following Missouri law in its decision.

So it is here. The facts are similar. The trial court properly found there was no evidence to support more than the $6,000 asked for in the petition.

In their cross appeal, the Spizmans complain about the admission of evidence of the insurance proceeds. They contend that the trial court erred in failing to sustain their objections to the insurance testimony and in failing to grant their motion for a mistrial after testimony disclosed the amount of the insurance proceeds received by the Spizmans. Their claims of error are denied.

The Spizman's introduced the subject of the insurance coverage for the roof damage at least three times prior to the time Jetco's counsel cross examined Mr. Spizman on the subject of the insurance.

Jetco's counsel elicited testimony concerning the amount of the insurance pay-

**58**

ment which was made to the Spizmans and questioned Mr. Spizman further on what he did with the money.

■ The court allowed the testimony. When the subject of insurance coverage was opened up by the complaining party, not once, but three times, it was not prejudicial error to allow Jetco to inquire about the amount of the coverage. *See Polster v. O'Hanlon,* 267 S.W.2d 381, 386[5] (Mo.App. 1954); *Grantham v. Herod,* 320 S.W.2d 536, 538[3] (Mo.1959).

Moreover, this was not a collateral source issue inasmuch as the insurance company had already paid the Spizmans who alone are liable for the judgment which was rendered. There was no question of a "deep pocket" here as the insurance company had already discharged fully its obligation under the contract.

The Spizmans rely on *Iseminger v. Holden,* 544 S.W.2d 550, 554 (Mo.banc 1976), for the proposition that a party admitting insurance coverage may be cross-examined with regard to that coverage only if the admission advantages the admitting party and prejudices the adversary. But *Iseminger* was a negligence case, not a breach of contract action. The court's reasoning in that case was based on the collateral source rule which prohibits a wrongdoer from seeking to reduce the damages for which he is liable by proving a plaintiff will be paid for his damages from a collateral source. In the case under review, it is the defendants who have received payment from a collateral source, not the plaintiff. *Iseminger* is not controlling. The admission of the evidence was not prejudicial error.

Obviously if the evidence were admissible, the motion for a mistrial properly was denied.

The judgment is affirmed in all respects.

CARL R. GAERTNER, J., and SIMEONE, Senior Judge, concur.